IN THE SUPREME COURT OF THE STATE OF DELAWARE

SANDHILL ACRES MHC, LC, §
 § No. 525, 2018
 Respondent Below, §
 Appellant, § Court Below: Superior Court
 § of the State of Delaware
 v. §
 §
SANDHILL ACRES HOME OWNERS §
ASSOCIATION, § Case No. S17A-08-001 ESB
 §
 Petitioner Below, §
 Appellee. §

Submitted: April 24, 2019
Decided: May 14, 2019

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Nicole M. Faries, Esquire, BAIRD MANDALAS & BROCKSTEDT, LLC, Wilmington, Delaware, for Appellant, Sandhill Acres MHC, LC.

Daniel S. Atlas, Esquire, Steven D. Adler, Esquire, and Brian S. Eng, Esquire, COMMUNITY LEGAL AID SOCIETY, INC., Wilmington and Dover, Delaware, for Appellee, Sandhill Acres Home Owners Association.

Michael P. Morton, Esquire, and Robert J. Valihura, Jr., Esquire, MORTON, VALIHURA & ZERBATO, LLC, Greenville, Delaware, for *Amicus Curiae* First State Manufactured Housing Association.

**STRINE**, Chief Justice:

This appeal concerns a manufactured housing community owner's attempt to raise the rent for its homeowner–tenants after installing a new water filtration system and commissioning a report on market rents for comparable manufactured housing communities. After the homeowners petitioned for an arbitration under the Rent Justification Act,[1] which places certain limitations on a community owner's ability to raise its tenants' rents, the arbitrator concluded that the rent increase was justified. On appeal, however, the Superior Court reversed on the grounds that the community owner did not establish that the installation of the water filtration system "was an increase in its costs" or that the expenditure caused "its original expected return [to] decline[]."[2] The community owner appeals from the Superior Court's decision.

Under the Rent Justification Act, a community owner need only show that there were no relevant health or safety violations and that "[t]he proposed rent increase is directly related to operating, maintaining or improving the manufactured home community" to open the door to a rent increase based on market rent.[3] Instead of adhering to this understanding of the statute, as explained in precedent, the Superior Court overruled the arbitrator's order allowing the rent increase, finding that the community owner "would have had to offer evidence about its original costs

---

[1] 25 *Del. C.* §§ 7040 *et seq.*
[2] *Sandhill Acres Home Owners Assoc. v. Sandhill Acres MHC, LC*, 2018 WL 4613716, at *5 (Del. Super. Ct. Sept. 18, 2018).
[3] 25 *Del. C.* § 7042(a), (b).

and original expected return and how the expenditure . . . altered that relationship."[4] Because that reasoning grafted onto the Act a requirement that the statute does not contain, we reverse the Superior Court's judgment and remand the case for the entry of a judgment affirming the arbitrator's order.

## I.

In the world of mobile homes—often called "manufactured houses" because they are in fact not so easy to move—many homeowners own their houses but rent the land on which the houses are located. That dynamic, the General Assembly found, gives the "community owner" that owns the underlying land "disproportionate power in establishing rental rates" due to "the difficulty and cost of moving the home."[5] To mitigate that power imbalance and protect homeowners' "substantial investment" while also ensuring that community owners can earn "a fair return" on their own investment,[6] the General Assembly passed the Rent Justification Act.[7] Under the Act, to raise homeowners' rent above inflation, a community owner must "demonstrate the increase is justified" for three "conditions": first, that there were no relevant health or safety violations; second, that "[t]he proposed rent increase is directly related to operating, maintaining or

---

[4] *Sandhill Acres*, 2018 WL 4613716, at *5.
[5] 25 *Del. C.* § 7040.
[6] *Id.*
[7] *Id.* §§ 7040–7046.

2

improving the manufactured home community"; and third, that "[t]he proposed rent increase is . . . justified by" at least one of several factors enumerated in the statute,[8] one of which is "market rent."[9] This Court has interpreted the "directly related" requirement to mean that the community owner must have "seen its costs increase for 'operating, maintaining or improving the manufactured home community,'" the idea being that the community owner's expected returns must have declined due to that increase in costs.[10]

In this case, a manufactured home community owner, Sandhill Acres MHC, LC ("Sandhill Acres"), sent written notice to its homeowner–tenants that it wanted to raise their rent to the market rent of $455 per month. At a community meeting about the proposed rent increase, Sandhill Acres told residents that it was relying on its installation of a new water filtration system, which cost $12,185, to satisfy the "directly related" requirement,[11] and it was relying on "market rent" as the additional factor needed to justify the rent increase.[12] Sandhill Acres also showed the

---

[8] *Id.* § 7042(a)(2).

[9] *Id.* § 7042(c)(7). "Market rent" is defined to mean "that rent which would result from market forces absent an unequal bargaining position between the community owner and the home owners," with relevant considerations "includ[ing] rents charged to recent new home owners entering the subject manufactured home community and/or by comparable manufactured home communities." *Id.*

[10] *Bon Ayre Land, LLC v. Bon Ayre Cmty. Assoc. (Bon Ayre II)*, 149 A.3d 227, 234–35 (Del. 2016) (quoting 25 *Del. C.* § 7042(a)(2)).

[11] *See* App. to Opening Br. at A-150 (Sandhill Acres 2017 Rent Increase Presentation).

[12] *Id.* at A-146.

homeowners an invoice stating the new water filtration system's cost,[13] photographs of the installed system,[14] a market rent report by Colliers International that supported the $455 figure,[15] and a slide stating that three new tenants moved into the Sandhill Acres community at a monthly rental rate of $455.[16]

Several homeowners objected to the rent increase and formed the Sandhill Acres Homeowners Association (the "Association") to seek arbitration under the Rent Justification Act as to whether the increase is justified under the Act. Finding for the community owner, the arbitrator held that the water filtration system expenditure satisfied the "directly related" requirement and that the Colliers study and evidence of new Sandhill Acres tenants' rental rates together justified the increase to $455 per month under the market rent factor.[17]

The Association appealed to the Superior Court, and the Superior Court reversed on the grounds that the "directly related" requirement was not satisfied.[18] As we read its opinion, the Superior Court relied on two alternative bases to reach that conclusion: first, that Sandhill Acres did not establish that the water filtration system expenditure "was an increase in its costs"; and second, that "Sandhill Acres

[13] *Id.* at A-151.
[14] *Id.* at A-152–53
[15] *Id.* at A-158–70 (slides from report in presentation); *id.* at A-215–72 (Colliers International Fair Market Rent Analysis).
[16] *Id.* at A-171 (Sandhill Acres 2017 Rent Increase Presentation).
[17] *Id.* at A-457–68, A-471–72 (Arbitrator's Decision).
[18] *Sandhill Acres*, 2018 WL 4613716.

also did not establish that because of this expenditure its original expected return has declined."[19] Ultimately, the Superior Court submitted, the community owner "would have had to offer evidence about its original costs and original expected return and how the expenditure . . . altered that relationship."[20] In other words, the Superior Court understood the "directly related" provision to require the community owner to affirmatively show, by opening up its books regardless of whether the homeowners requested them, both that its overall costs are higher than they previously were and that its original expected return had declined. Because Sandhill Acres made neither of those two showings here, the Superior Court held that the arbitrator had erred in applying the law.

## II.

On appeal, Sandhill Acres argues that the Superior Court erred by misinterpreting the Rent Justification Act and this Court's precedents to require a greater showing by the community owner as to the "directly related" requirement than the statute calls for, and that the arbitrator's decision permitting a rent increase

---

[19] *Id.* at *5.
[20] *Id.*

to the market rent of $455 should be affirmed.[21]  We review the Superior Court's interpretation of the Rent Justification Act *de novo*.[22]

Under the plain language of the Act, to increase rent above inflation, a community owner need only show that there are no relevant health and safety violations and that "[t]he proposed rent increase is directly related to operating, maintaining or improving the manufactured home community," at which point the door is opened to a rent increase based on a range of statutory factors, including "market rent."[23]  Tying this language to the Act's purposes as framed by the General Assembly, we previously interpreted the "directly related" requirement to mean that the community owner "must show that its original expected return has declined, because the cost side of its ledger has grown."[24]  We also noted that this requirement "is a modest one, which only requires the landowner to produce evidence suggesting that the 'return' on its 'property' has declined."[25]

---

[21] In the alternative, Sandhill Acres argues that the Superior Court erred by not allowing at least some portion of its proposed rent increase—the portion that can be attributed to the cost of the water filtration system, which Sandhill Acres contends amounts to $7.93—and that it should therefore be allowed to increase the rent by at least $7.93, even if it cannot use the market rent of $455.  Because we hold that the Superior Court should have affirmed the arbitrator's decision to allow a rent increase to the full market rate of $455, we need not reach this issue.

[22] *Bon Ayre Land, LLC v. Bon Ayre Cmty. Assoc. (Bon Ayre II)*, 149 A.3d 227, 233 (Del. 2016).

[23] 25 *Del. C.* § 7042(a), (b); *see also Bon Ayre II*, 149 A.3d at 234 ("To impose an increase beyond CPI-U, the landowner must . . . show that the increase is 'directly related to operating, maintaining or improving the manufactured home community.' . . . If a landowner can show that its costs have gone up, that opens the door to a rent increase based on § 7042(c)'s factors, including market rent." (quoting 25 *Del. C.* § 7042(a)(2)).

[24] *Bon Ayre II*, 149 A.3d at 234.

[25] *Id.* at 235–36.

With that background in mind, we hold that the Superior Court misinterpreted the Act by imposing a requirement on the community owner that the statute does not contain. Under the Superior Court's reading of the Act, any community owner that proposes to rely on capital improvements it has made to the community to satisfy the directly related requirement would have to affirmatively "offer evidence about its *original* costs and *original* expected return and how the expenditure . . . altered that relationship."[26] There is no basis in the Act to infer such a requirement. Rather, the proposed rent increase need only be "directly related to . . . improving the manufactured home community."[27] To make a *prima facie* case that a rent increase is directly related to improving the community—a requirement that we have previously described as "modest"[28]—it suffices for the community owner to offer evidence that in making some capital improvement, the community owner has incurred costs that are likely to reduce its expected return. Although a homeowner would be entitled to rebut that *prima facie* case by offering evidence of her own that the expenditure did not in fact reflect any increase in costs—for example because the expenditure was offset by reduced expenses in other areas—the homeowners in this case do not argue that they offered any such evidence below.[29]

---

[26] *Sandhill Acres*, 2018 WL 4613716, at *5 (emphasis added).

[27] 25 *Del. C.* § 7042(a)(2).

[28] *Bon Ayre II*, 149 A.3d at 235–36.

[29] On appeal, Sandhill Acres asserts that the Association "neither requested Sandhill's books and records nor made a demand to the Arbitrator for such materials." Opening Br. at 34. The Association does not deny this; rather, its main arguments focus on whether the evidence that was

7

To be clear, we do not mean to imply that any increase in costs, no matter how small relative to the proposed rent increase, will necessarily satisfy the directly related requirement. The requirement may be modest, but it is not toothless. For example, if a community owner were to spend $1,000 on touching up aspects of the community, and then sought a much larger rent increase disproportionate to those costs (*e.g.*, $25,000 annually), an arbitrator would be justified in concluding that the proposed rent increase was not directly related to operating, maintaining, or improving the community. To satisfy that requirement, there should be a material capital expenditure or increase in operational or maintenance expenses that has a substantial relationship to the rent increase sought. Here, for example, the community owner spent $12,185 on a new water filtration system, which was at least a material percentage of the proposed annual rent increase of about $53,760.[30] But, once the community owner has shown that the rent increase satisfies the directly related requirement, then the Act allows the community owner to seek, and the arbitrator to grant, a rent increase that is justified, in the sense that the proposed

---

before the arbitrator was sufficient to justify his decision. *See* Answering Br. at 18–24 (arguing that Sandhill Acres "failed to prove that its original expected return declined because of increased costs").

[30] According to the Association, "on average the rent increase was $35 per lot, per month," and there were 128 lots in total. Opening Br. at 7–8.

increase is reasonable based on the consideration of one or more of the relevant statutory factors, including market rent.[31]

This understanding of the Act and its application to the record in this case follows from our decision last year in *Donovan Smith HOA v. Donovan Smith MHP*.[32] In *Donovan*, the community owner had sought to use its installation of driveways and painting of a maintenance building to satisfy the directly related requirement, and it had used market rent as the additional factor.[33] Finding for the community owner, the arbitrator rejected the homeowners' argument that "the evidence was not sufficient because the [community owner] 'hasn't proven that he's had increased expenses . . . [or] shown any data where we're . . . balancing his books so that he can make a profit and continue his business in a way.'"[34] Both the Superior Court and this Court affirmed, with this Court reasoning that "[a]lthough the

---

[31] *See* 25 *Del. C.* § 7042(a)(2), (c). Because market rent is defined as "that rent which would result from market forces absent an unequal bargaining position between the community owner and the home owners," with "relevant considerations includ[ing] rents charged to recent new home owners entering the subject manufactured home community and/or by comparable manufactured home communities," *id.* § 7042(c)(7), the market rent factor serves not just the interests of community owners in securing a rent increase, but also the interests of homeowners by focusing the inquiry on the rent paid by new entrants not subject to the compromised bargaining position of existing homeowners. By defining market rent not in terms of what the community owner would be able to force on a stuck-in tenant—who would have to incur substantial costs to move her manufactured home to another community—but rather in terms of what the marginal prospective tenant would pay, the Act attempts to mitigate the "disproportionate power in establishing rental rates" that the community owner would otherwise have, *id.* § 7040. In this appeal, the Association does not challenge the substance of the market rent analysis the arbitrator employed in determining that the increase was justified.

[32] 190 A.3d 997, 2018 WL 3360585, at *2 (Del. July 10, 2018) (TABLE).

[33] *Id.* at *1–2.

[34] *Id.* at *1 (quoting the Arbitrator's Decision).

[community owner] did not present evidence on what these improvements cost, the arbitrator was charged with addressing the evidence in front of him and making fair inferences from it," with "[o]ne fair inference" being "that adding a driveway to each unit involved a substantial cost, and that repainting the maintenance building also involved a cost, and that without an increase in rent, the [community owner's] rate of return would have been reduced."[35]

Here, like in *Donovan*, Sandhill Acres provided evidence that its costs had increased—in the form of photographs and an invoice for the new water filtration system—and the Association did not present any evidence of its own to contest Sandhill Acres's claim that its costs had increased. And like in *Donovan*, the arbitrator correctly followed the Rent Justification Act's standards to conclude— based on the evidence that was before him—that the increase in costs satisfied the directly related requirement.[36] That conclusion was supported by substantial record evidence, and the Superior Court erred by refusing to "accord deference to the arbitrator."[37]

---

[35] *Id.*

[36] *See* 25 *Del. C.* § 7043(g) ("The arbitrator will render a decision employing the standards set forth in § 7042 of this title."); *id.* § 7042(a) ("A community owner may raise a home owner's rent [above inflation] . . . provided the community owner can demonstrate the increase is justified for the following conditions [including the directly related requirement and an additional factor] . . . .").

[37] *Donovan*, 2018 WL 3360585, at *3. The Rent Justification is somewhat unclear about the appellate standard of review, stating that the reviewing court must determine "whether the record created in the arbitration is sufficient justification for the arbitrator's decisions and whether those decisions are free from legal error." 25 *Del. C.* § 7044. Considering substantially similar language

10

Of course, the Superior Court was correct to the extent that it held that both sides of the community owner's financial statements bear logically on whether and to what extent a rent increase is "directly related to operating, maintaining or improving the manufactured housing community" under the Act.[38] But, as in any matter, the parties to a case should shape the record by exchanging requests for information; a community owner seeking a rent increase would not be in any equitable or legal position to resist a reasonable request for information about its costs and profit margins.[39] As in any adversarial proceeding, legitimate

---

in a prior version of the statute, we previously observed that this language sounds somewhat like substantial evidence review. *See Bon Ayre Land LLC v. Bon Ayre Cmty. Assoc. (Bon Ayre I)*, 133 A.3d 559, 2016 WL 747989, at *2 n.11 (Del. Feb. 25, 2016). Since that observation, the General Assembly has amended the Rent Justification Act without materially changing the language in the appeals section, and every Superior Court decision reviewing an arbitrator's decision under the Rent Justification Act has applied substantial evidence review. *See December Corp. v. Wild Meadows Home Owners Assoc.*, 2016 WL 3866272, at *2–4 (Del. Super. Ct. July 12, 2016); *Bon Ayre Land, LLC v. Bon Ayre Cmty. Assoc.*, 2016 WL 7036580, at *2–3 (Del. Super. Ct. Dec. 2, 2016); *Pot–Nets Lakeside, LLC v. Lakeside Cmty. Homeowners Assoc.*, 2017 WL 3168969, at *6 (Del. Super. Ct. July 17, 2017); *Sandhill Acres Home Owners Assoc. v. Sandhill Acres MHC, LLC*, 2018 WL 4613716, at *1 (Del. Super. Ct. Sept. 18, 2018). *Donovan* suggests a similar view, with its conclusion that "[t]he arbitrator's findings were justified by the substantial record evidence" and its willingness to "accord deference to the arbitrator." 2018 WL 3360585, at *3. We therefore conclude that substantial evidence review is the appropriate standard of review for the arbitrator's factual findings.

[38] 25 *Del. C.* § 7042(a)(2).

[39] *See Donovan*, 2018 WL 3360585, at *2–3. In *Donovan*, we affirmed the arbitrator's order permitting a rent increase, but noted that our decision did not mean that a community owner "may seek an above-inflation rent increase without any worry that the homeowners could examine the underlying business records necessary to test whether the proposed rent increase" satisfies the directly related requirement. *Id.* at *2. Thus, "in a later case, the outcome could be quite different, especially if the homeowners fairly demand discovery of the landowner's books and records relevant to the question of whether the proposed above-inflation rent increase is 'directly related to operating, maintaining or improving the manufactured home community' and the arbitrator fails to require production of those records." *Id.* at *3 (internal footnotes omitted).

11

confidentiality and proprietary concerns should be addressed by the arbitrator through the imposition of use restrictions, and any excessively burdensome requests for information may be denied. As a bottom-line matter, the community owner must make a choice. Refrain from seeking an increase above inflation and thus be able to keep its financial information to itself, or seek an increase and be willing to incur the concomitant requirement to justify that increase. On a complete record, that allows the tenants to make fair arguments and the arbitrator to assess whether the proposed increase satisfies the directly related requirement in view of a balanced record taking into account both key factors: revenues and costs.

Ultimately, the case presented to us on appeal is not a discovery dispute, but rather is about the Superior Court's interpretation of the directly related requirement and whether the record adequately supports the arbitrator's determination that the proposed rent increase satisfies that requirement. Focusing on those key issues, we hold that the Superior Court misinterpreted the statute and that there was sufficient record evidence to support the arbitrator's decision.

The Superior Court's decision is reversed, and the case is remanded for the entry of a judgment affirming the arbitrator's order.