# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DONOVAN SMITH MHP, LLC, | : C.A. No.   S18A-05-002 CAK |
| | : |
| Appellant, | : |
| | : |
| v. | : |
| | : |
| DONOVAN SMITH HOA | : |
| | : |
| Appellee. | : |

Submitted: July 30, 2019
Decided: October 14, 2019

*Upon Appellant's Appeal from Arbitrator's Decision dated April 23, 2018*

**DENIED**

**MEMORANDUM OPINION AND ORDER**

Seth L. Thompson, Esquire, Parkowski Guerke & Swayze, P.A., 1105 North Market St., 19th Floor, Wilmington, DE 19801, Attorney for Appellant.

Dmitry Pilipis, Esquire, Community Legal Aid Society, Inc., 100 West 10th Street, Suite 801, Wilmington, DE 19801, Attorney for Appellee.

**KARSNITZ, J.**

# I.     INTRODUCTION

Before me is an appeal from an Arbitrator's decision (the "Decision') denying Donovan Smith MHP, LLC ("Appellant" or "Landowner"), the owner of the Donovan Smith Mobile Home Park in Lewes, Delaware (the "Community"), a rent increase above CPI-U[1] on the tenants of the Community ("Homeowners") under the Affordable Manufactured Housing Act, colloquially known as the Rent Justification Act (the "Act").[2]  The Arbitrator found that Donovan Smith had not met the requirements under the Act to increase the rent in the amount requested.[3] Although I find legal error in one aspect of the Decision, it does not affect the outcome of the matter.   Thus, I affirm the Decision for the reasons stated herein.

# II.    PROCEDURAL BACKGROUND

On December 19, 2017, Landowner notified Homeowners of its intent to increase rent above CPI-U effective April 1, 2018.[4]   After an unsuccessful meeting between Landowner and Homeowners on January 14, 2018, a group of

---

[1] This is defined in the statute as the "average annual increase in the Consumer Price Index for All Urban Consumers in the Philadelphia–Wilmington–Atlantic City area... for the most recently available 36–month period." 25 *Del. C.* § 7043.

[2] Chapter 70 of Title 25 of the Delaware Code, 25 *Del. C.* §§ 7040 – 7046.

[3] The requested amount of new rent was $537.50, to be effective April 1, 2018. That amount represented a $60.00 increase for lots rented at $477.50 (a 12.6% increase) and a $32.50 increase for lots rented at $505.00 (a 6.4% increase0.

[4] The bases stated were 2017 improvements to the Community, continued annual losses, and market rent.

Homeowners represented by the Donovan Smith Home Owners Association ("Appellee" or the "HOA") filed a petition for arbitration under the Act. The Arbitration was held on April 13, 2018 and the Decision was issued on April 23, 2018. On July 5, 2018, this Court stayed the matter until the Delaware Supreme Court issued its decision in *Donovan Smith HOA v. Donovan Smith MHP, LLC*, No. 24, 2018. That case was decided on July 10, 2018,[5] whereupon briefing resumed. Appellant's Opening Brief on Appeal was filed on August 13, 2018, Appellee's Answering Brief on Appeal was filed on September 24, 2018, and Appellant's Reply Brief on Appeal was filed on October 9, 2018. On January 16, 2019, I ordered that the matter be stayed again until the Delaware Supreme Court issued a decision in *Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Association*, No. 525, 2018 ("*Sandhill Acres*"). That case was decided on May 14, 2019.[6] On July 30, 2019, I heard oral argument from counsel for both parties.

### III. STANDARD OF REVIEW

The various iterations of the Act have created confusion as to the appropriate standard the Superior Court should use in reviewing arbitration decisions under the Act.[7] The Act now states the following standard:

---

[5] 190 A. 3d 997 (2018).

[6] 210 A.3d 725 (2019).

[7] See *December Corp. v. Wild Meadows Home Owners Ass'n*, 2016 WL 3866272 (Del. Super.

"The appeal shall be on the record and the Court shall address written and/or oral arguments of the parties as to whether the record created in the arbitration is sufficient justification for the arbitrator's decisions and whether those decisions are free from legal error."[8]

In *Sandhill Acres, supra*, the Delaware Supreme Court put to rest the issues surrounding the standard of review. It held:

"We therefore conclude that substantial evidence review is the appropriate standard of review for the arbitrator's factual findings."[9]

The parties in this case agree that the applicable standard of review is whether the decision of the Arbitrator is supported by substantial evidence and free from legal error. I have a limited role when reviewing the Decision by the Arbitrator. If the Decision is supported by substantial evidence and free from legal error, the Decision will be affirmed. Substantial evidence is evidence that a reasonable person might find adequate to support a conclusion. Freedom from legal error exists when the Arbitrator applied the relevant legal principles. The Arbitrator determines the credibility of witnesses, weighs evidence and makes factual findings. I do not sit as the trier of fact, nor should I substitute my judgment for that rendered by the Arbitrator. I must affirm the decision of the Arbitrator, if properly supported, even if I might, in the first instance, have

July 12, 2016).

[8] 25 *Del. C.* § 7044. The Act is being revised and recodified as of December 10, 2019, but this provision will remain the same.

3

reached an opposite decision. Only when there is no satisfactory proof in support of a factual finding of the Arbitrator may I overturn it.

## IV.  THE ACT

The Act requires several factors be shown before Landowner may increase rent above CPI–U:

First, Landowner must not have been found, in the most recent 12 months, to be in violation of any provision that "threatens the health and safety of the residents" for more than 15 days after notification of the violation;[10] and

Second, the proposed rent increase must be "directly related to operating, maintaining, or improving the manufactured home community,"[11] *and*

Third, the proposed rent increase must be justified by one or more of the following eight factors: (1) capital improvements;[12] (2) changes in taxes;[13] (3) changes in utilities;[14] (4) changes in insurance costs and financing;[15] (5) changes

---

[9] *Sandhill Acres, supra,* at fn. 37 (Del. May 14, 2019).
[10]  25 *Del. C.* § 7042(a)(1).
[11]  25 *Del. C.* § 7042(a)(2).
[12] 25 *Del. C.* § 7042(c)(1).
[13] 25 *Del. C.* § 7042(c)(2).
[14] 25 *Del. C.* § 7042(c)(3).
[15] 25 *Del. C.* § 7042(c)(4).

in operating and maintenance expenses;[16] (6) repairs other than ordinary wear and tear;[17] (7) "market rent";[18] and, (8) rental assistance.[19]

The word "and" emphasized above is important in this case. In *Bon Ayre Land, LLC v. Bon Ayre Community Association*, 149 A.3d 227 (Del. 2016) (*"Bon Ayre II"*), Landowner argued that the word "and" should be read as the word "or," and that Landowner could satisfy *either* the "directly related" requirement *or* the "market rent" requirement. The Delaware Supreme Court disagreed, determining that Landowner must meet *both* requirements.[20] Only if Landowner demonstrates that the "directly related" requirement has been met is the door opened to consider whether the "market rent" requirement has been met.

## V.     ANALYSIS

### A.     "Health and Safety" Requirement

There is no dispute that this requirement was met by Landowner.

### B.     "Directly Related" Requirement

The reason for my January 16, 2019 Order staying this matter was to receive

---

[16] 25 *Del. C.* § 7042(c)(5).
[17] 25 *Del. C.* § 7042(c)(6).
[18] 25 *Del. C.* § 7042(c)(7).
[19] 25 *Del. C.* § 7042(c)(8).
[20] *Bon Ayre Land, LLC v. Bon Ayre Community Association*, 149 A.3d 227 (Del. 2016) (*"Bon Ayre II"*), at 230.

5

guidance from the Delaware Supreme Court on the appropriate determination as to whether this requirement has been met by Landowner. The Supreme Court provided such guidance on May 14, 2019 in *Sandhill Acres*. Counsel addressed the effect of *Sandhill Acres* on the Decision in their July 30, 2019 oral argument.

At the Arbitration, Landowner presented "new" expenses for 2017 in the total amount of $53,983.93 for "operating, maintaining or improving" the Community.[21] However, the record of the Arbitration also shows that expenses for the Community for 2017 *decreased* from expenses in 2015 and 2016.[22] The approximate $60,000 reduction in 2017 expenses was primarily attributed to the refinancing of the mortgage on the Community, which reduced interest-carrying costs. Landowner did not show an increase in overall annual expenses for 2017, resulting in a loss of profit. Nonetheless, Landowner argued that for all three of these years the Community operated at a loss.

Landowner argues that the Arbitrator erred in finding the rent increases not "directly related" to the operation, maintenance or improvement of the Community. Landowner also argues that under *Bon Ayre II* it was legal error for

---

[21] This amount includes $14,183.93 for paving roads, $14,800.00 for tree removal, and $25,000.00 in costs anticipating a hook up to the Lewes, Delaware sewer system. The first two of these expenses are reasonably viewed as maintenance expenses, and the third expense is reasonably viewed as an improvement expense. The disjunctive "or" obviates the need that all three types of expenditures be made.

[22] Expenses were $590,000 for 2015, $601,500 for 2016, and $538,369 for 2017.

6

the Arbitrator to require a showing of a loss of profit due to an increase in overall annual expenses, especially when the Community had been operating at a loss for three years. Moreover, Appellant argues that there was insufficient evidence that Landowner had not been operating at a loss.

Appellee counters that operating at a loss is not a grounds for a finding the rent increases "directly related" to the operation, maintenance or improvement of the Community. Moreover, Appellee argues, when the mortgage was refinanced, there was a "financed profit-taking" rather than ordinary profit-taking; i.e., the proceeds of the refinanced debt were used to make distributions to members of Landowner, rather than to operate, maintain or improve the Community for the benefit of Homeowners. Although any mortgagor is free to refinance its debt, Appellee argues that the stated purpose of the Act is to protect Homeowners from material increases in rent unrelated to the operation, maintenance or improvement of the Community. Appellee argues that *Bon Ayre II* requires both sides of the ledger to be reviewed – not just new expenses – and that Landowner did not prove that its profits were down because its expenses were up; therefore, it failed to meet the "directly related" requirement.

*Sandhill Acres* directly addresses the "directly related" issue. In that case, Landowner sought to increase rent above the CPI-U to $455 per month (a

7

$53,760 increase for the entire Community). It relied in part on the installation of a new water filtration system for $12,185 to meet the "directly related" requirement under the Act. Landowner showed neither that its overall costs increased, nor that its original expected return declined, because of the water filtration expenditure. The Delaware Supreme Court held that:

> "To make a *prima facie* case that a rent increase is directly related to improving the community—a requirement that we have previously described as "modest" —it suffices for the community owner to offer evidence that in making some capital improvement, the community owner has incurred costs that are likely to reduce its expected return."[23]

The Supreme Court compared the $12,185 expense to the $53,760 rent increase, and found it sufficient to satisfy the "directly related" requirement,[24] thereby opening the door for Landowner to meet the "market rent" requirement.

Applying the *Sandhill Acres* test to the facts of this case, Landowner had new expenses of $53,984, more than meeting the "directly related" requirement in relationship to the aggregate amount of the rent increase.

Thus, I agree with Appellant that the Arbitrator erred as a matter of law in finding the rent increases not "directly related" to the operation, maintenance or improvement of the Community. This aspect of the Arbitrator's Decision is

---

[23] *Sandhill Acres, supra,* at 729.
[24] The Supreme Court did state that the "directly related" requirement, although modest, is not toothless. For example, a $1,000 expense compared to a $25,000 rent increase would not meet

8

reversed, and I find that, on the facts of this case, the rent increases are "directly related" to the operation, maintenance or improvement of the Community under the Act. This opens the door for consideration of whether Landowner met the "market rent" requirement.

### C. "Market Rent" Requirement

In this case, the Arbitrator determined that Landowner had failed to prove the "market rent" requirement. The parties agreed, and the Arbitrator accepted, that a neighboring community, McNicol Place, was comparable to the Community. The Act defines "market rent" as:

> "[R]ent which would result from market forces absent an unequal bargaining position between Landowner and Homeowners."[25]

The Act further provides how market rent is to be determined:

> "In determining market rent, relevant considerations include rents charged to recent new Homeowners entering the subject manufactured home community and/or by comparable manufactured home communities. To be comparable, a manufactured home community must be within the competitive area and must offer similar facilities, services, amenities and management."[26]

Not surprisingly, no two communities are exactly alike. Here, while being "comparable," McNicol Place has some significant differences. I find those

---

the "directly related" requirement.
[25] 25 *Del. C.* § 7042(c)(7).

differences sufficient to support the Arbitrator's conclusion that the McNicol Place rental rate "... not a helpful consideration to determine market rent."[27] The differences included McNicol Place having larger lots, better-maintained homes, wider streets in better condition, and superior landscaping. No expert or other evidence was presented to the Arbitrator to evaluate these differences. I find the Arbitrator's determination on this point free from legal error and supported by the record.

The parties also submitted evidence about new lot rentals at the Community, and the Arbitrator found it the "best evidence" of the market rent for the Community.[28] The evidence on this point showed a substantial volume of vacant or unoccupied lots, suggesting that the current rent created unmarketable units. The evidence also showed that Landowner had purchased some homes, and refurbished some existing, abandoned homes. According to the evidence, Landowner has been unsuccessful in selling or renting these homes. In short, the Arbitrator's determination that the lot rental rate for new or refurbished homes failed to support the claim that the lot rental rate for existing homes was below market rent is fully supported by substantial evidence. Landowner simply failed

---

[26] *Id.*
[27] *Arb. Order* at p. 5.
[28] *Id.*

to prove the "market rent" component of the statutory requirements. I find the Arbitrator's Decision to be supported by the record and affirm it.

## VI.  CONCLUSION

The Arbitrator here acted in full compliance with the Rent Justification Act. He held the appropriate hearing and thoughtfully evaluated the evidence. While I reverse his decision as to the "directly related" requirement of the Act, I had the benefit of our Supreme Court's decision in *Sandhill Acres*. I affirm the Arbitrator's Decision on the affirmative grounds he gave; that is, Landowner simply failed to prove the "market rent" for the Community supported the requested rent increase.

Appellant's Appeal from the Arbitrator's Decision is **DENIED**.

The Arbitrator's Decision is **AFFIRMED**.

IT IS **SO ORDERED** THIS 14th DAY OF OCTOBER 2019.

FILED PROTHONOTARY SUSSEX COUNTY 2019 OCT 14 A 11: 04

_____
Craig A. Karsnitz. Judge

11

cc:    Prothonotary's Office
       Counsel of Record
       Louis J. Rizzo, Jr., Esquire (Arbitrator)