# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

REHOBOTH BAY
HOMEOWNERS' ASSOCIATION,

         Appellant,

HOMETOWN REHOBOTH BAY, LLC,

         Appellee.

:
:
: C. A. No. S18A-03-003 CAK
:
:
:
:
:
:

Submitted: February 17, 2020
Decided: March 16, 2020

Upon Appeal from the Decision of the Arbitrator

**AFFIRMED**

## **MEMORANDUM OPINION AND ORDER**

Olga K. Beskrone, Esquire, Baird, Community Legal Aid Society, Inc., 100 W. 10th Street, Suite 801, Wilmington DE 19801, Attorney for Appellant

Michael P. Morton, Esquire, Morton, Valihura & Zerbato, LLC, 3704 Kennett Pike, Suite 200, Greenville, Delaware 19807, Attorney for Appellee

**KARSNITZ, J.**

Statutes are often the product of widely divergent interests. As a result, statutory schemes are often laced with contradictory or, more commonly, ambiguous requirements. The Rent Justification Act[1] (the "Act") is one such statute. The requirements of the Act are delivered with such parisology that the reader is never certain as to where it stands. Arguments regarding the interpretation of the Act sometimes border on batrachomyomachy. Fortunately, our Supreme Court has on a number of occasions given fair meaning to the provisions of the Act, thereby giving me guidance to sort through the issues.

Appellee, Hometown Rehoboth Bay, LLC ("Landowner"), is the owner of a manufactured housing community located on its namesake Bay. Landowner sought to raise its lot rent and initiated the process set forth in the Act. Landowner presented evidence it believed satisfied the mandates of the Act. Appellant, Rehoboth Bay Landowners' Association ("Homeowners") was not convinced that the rent increases had been justified, and asked that the issues be arbitrated as allowed by the Act.

An extensive arbitration proceeding was conducted, including post-hearing submissions. The Arbitrator issued his findings and decision [2] that

[1] 25 *Del. C.* §7040 *et seq.*
[2] See generally the Arbitrator's Letter Opinion and Order dated March, 2018 (the "Arbitrator's Decision").

1

Landowner had met the conditions required for a rental increase, but had not justified the full amount requested. The Arbitrator did approve a rental increase of $74.85 per month plus the Statutory Consumer Price Index amount.[3]

Homeowners appealed the Arbitrator's Decision. The matter was stayed pending decision of the Delaware Supreme Court in a different case addressing the Act.[4] After *Sandhill* was decided, the parties briefed all issues. Oral Argument was held on February 17, 2020 and I reserved decision.

Homeowners provided certain documents which were not part of the record. Landowner moved to strike the records and Homeowners moved to expand the record. I deferred decision on this issue as well.

## THE ARBITRATION PROCEEDING AND THE ARBITRATOR'S DECISION

25 *Del. C.* §7042 (a)(1) and (2) are colloquially called the "door opener" provisions of the Act. In order to seek a rent increase, a landowner must first show that the landowner was not in violation at any health or safety regulations for the previous twelve months. This provision is rarely at issue, and was not at issue here. The parties stipulated that Landowner satisfied it. The other door opener, frequently litigated, is that the landowner must show that the proposed increase "...is directly

---

[3] Justification is not required for this increase.
[4] *Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Association*, 210 A.3d 725 (Del. 2019) ("*Sandhill*").

2

related to operating, maintaining or improving... "[5] the community. If the door opener requirements are met, the landowner must still meet one of the factors set forth in 25 *Del. C.* §7042 (c). The Arbitrator determined Landowner met the "directly related" requirement:

> ...with proof of improvements to the community that cost $20,646.00 and for which it is not seeking recovery through rent increases.[6]

These costs included expenditures for maintaining a shop floor, adding beach sand, maintaining lift stations, maintaining wells, fixing a drainpipe and repairing a sea wall. Landowner asserted that these expenses satisfied the "directly related" requirement, and then presented evidence it argued satisfied § 7042 (c)(l), which reads in full:

> The completion and cost of any capital improvements or rehabilitation work in the manufactured home community, as distinguished from ordinary repair, replacement and maintenance.

The evidence consisted of particularized costs for a number of items, most particularly a bulkhead stabilization expense of almost a half million dollars. The Arbitrator reviewed all of the items, rejected some, and accepted others,

---

[5] 25 *Del. C.* §7042.
[6] Arbitrator's Decision, pp. 8, 9.

including the bulkhead expense. The Arbitrator then calculated the per lot increase for the items allowed and permitted a rent increase of $74.85 per month to recapture the allowed expenses.

Landowner has not appealed the Arbitrator's Decision denying certain of its expenses. With respect to §7042(c)(1), Homeowners challenge only the bulkhead expense. Homeowners also challenge the decision that Landowner met the "directly related" requirement.

The Act requires that I give deference to the factual findings of the Arbitrator and review his rulings on questions of law for "legal error".[7]

## THE "DIRECTLY RELATED" STANDARD

In *Bon Ayre Land, LLC v. Bon Ayre Community Association*,[8] (often called "*Bon Ayre II*"), the Delaware Supreme Court articulated:

> by requiring a showing that above inflation rent increases were related to community expenses, the General Assembly has simply said that a landowner must show that its costs of operation have increased in a manner that has caused the landowner's 'Just, reasonable and fair return on their property' to decline [9] (Internal citation omitted)

---

[7] *25 Del. C.* §7044.
[8] 149 A.3d 227 (Del. 2016).
[9] *Id.* at 234.

This language steered parties litigating rent increases to focus on an accounting analysis. In *Sandhill Acres Homeowners Association v. Sandhill Acres MHC, LLC*,[10] this Court imposed a requirement imbedded in the "directly related" standard that a landowner must not only show that it has incurred some costs, but that costs increased and the landowner's expected return had declined. On appeal our Supreme Court reversed.[11] The Court defined the standard as follows:

> to make a *prima facie* case that a rent increase is directly related to improving the community a requirement that we have previously described as modest - it suffices for the community owner to offer evidence that in making some capital improvement, the community owner has incurred costs that are likely to reduce its expected return.[12] (Internal citation omitted)

In *Sandhill,* the landowner proved it had had additional costs of $12,185 for installation of a new water filtration system to satisfy the "directly related" requirement.

In his decision in the current case, the Arbitrator found that Landowner had proved that its costs relating to operating, maintaining and improving the community increased by $20,646. Homeowners argue that the Arbitrator's Decision is wrong as a matter of law because the costs incurred were not for improvements

---

[10] 2018 WL 4613716 (Del. Super. September 18, 2018).
[11] *Sandhill Acres MHC, LLC v. Sandhill Acres Homeowners Association*, 210 A. 3d 725 (Del. 2019).
[12] *Id*. at.729.

5

but for maintenance. In making this argument, Homeowners rely upon language from *Sandhill Acres* in which the Court said the following:

> ...it suffices for the community owner to offer evidence that in making some capital improvement, the community owner has incurred costs that are likely to reduce its expected return.[13]

Homeowners focus narrowly on the "capital improvements" language and argue the costs were not "capital improvements." In my view, Homeowners read the quoted language out of context, and too narrowly. The statutory language of §7042(a)(2), the "directly related" language, allows costs for "...operating, maintaining or improving" the community. The quoted language was a shorthand description and did not foreclose consideration of costs within the statutory categories. On this topic, the Arbitrator was correct, and I affirm his view.

Homeowners also challenge the Arbitrator's Decision as not supported by the evidence of record. As I read their argument, Homeowners contend that, to meet its burden, Landowner must provide evidence that the increased costs result in lower returns or profits. For me, this is inconsistent with the *Sandhill* decision. In the Superior Court *Sandhill* decision, the Court engaged in the accounting analysis suggested by Homeowners. This accounting approach was rejected in the

---

[13] *Sandhill Acres*, 210 A.3d. at 729.

Supreme Court *Sandhill* decision. To me, *Sandhill*, despite language that may suggest inquiry into the effect of costs on profits, takes a narrower view. The Supreme Court in *Sandhill* ultimately described the low bar set by the "directly related" standard. In my view, the bar was met here as a matter of fact. There is substantial evidence to support the Arbitrator's factual determination.

I address a related issue. Homeowners sought to supplement the record with correspondence from a prior "rent justification" case between the parties. The correspondence is offered to show that, in that prior case, Homeowners sought financial data from Landowner to examine the effect of any costs to improve the manufactured home community. Landowner opposed the request to expand the record. Homeowners now want me to remand the case to the Arbitrator so that the additional evidence can be adduced, and factored into the Arbitrator's decision.

I reject Homeowners' request. First, litigation must come to an end. Second, the Act limits me to an analysis of the record made.[14] I also adopt the reasoning of the Court in *Iacona v. Hometown Rehoboth Bay, LLC*[15] on this very issue, which denied a similar request.

I recognize that *Sandhill* gave a breath of life to Homeowners' position that the accounting analysis is relevant. I also recognize that pre-*Sandhill* efforts to

---

[14] See 25 *Del. C.* §7044..

[15] *Iacona v. Hometown Rehoboth Bay, LLC*, C.A. No. S17A-04-001RFS, Stokes, J. (Del. Super. September 27, 2019 (ORDER), 2019 WL 4740522 (September 27, 2019).

7

obtain the information were routinely rebutted by landowners. While I have concerns about the predicate described by Homeowners (whether an accounting analysis is *ever* appropriate), their choice dictates the result here, as it did in the *Iacona* case. I deny Homeowners' request to either supplement the record or remand the case to the Arbitrator.

## THE ADDITIONAL REQUIREMENTS OF §7042(c)

Once a landowner has satisfied the "directly related" requirement, it must also prove one or more factors listed in 25 *Del. C.* §7042(c) to get to the promised land of rent justification. The most common factor seems to be "market rent."[16]  Here, Landowner chose a different path and primarily relied upon 25 *Del. C.* §7042 (c)(1),[17] which reads in full:

> The completion and cost of any capital improvements or rehabilitation work in the manufactured home community, as distinguished from ordinary repair, replacement and maintenance.

The challenged claim involved the repair and almost complete replacement of a bulkhead at a cost of close to one-half million dollars. Homeowners vociferously argue that the work on the bulkhead is "ordinary repair" and thus does

---

[16] 25 *Del. C.* §7042(c).
[17] Landowner also made claims under 25 *Del. C.* §7042 c(2) and c(3), but they are not disputed.

8

not meet the §7042 (c)(l) standard. The short answer is that there was more than sufficient evidence in the record to support the Arbitrator's Decision that the expense did qualify. The bulkhead in the community was in poor shape and it was replaced by an alternate construction method. I agree with the Arbitrator's Decision that this cost was for capital improvements or rehabilitation work, and not ordinary repair, replacement and maintenance.

All other items found by the Arbitrator to be within the boundaries of §7402(c)(l), (2) or (3) are supported by substantial evidence and I affirm his findings. I also note that the Arbitrator rejected some of Landowner's claims, and no appeal was taken as to these determinations. The Arbitrator's mathematical calculations are accurate.

The Arbitrator held the appropriate hearing and issued a thoughtful and factually supported decision. I differ to a degree with respect to his "different reading" of §7042(a)(2),[18] but that difference does not affect any of Homeowners' claims.

---

[18] See Arbitrator's Decision, p. 11.

For the reasons set forth in this Opinion, I affirm the Arbitrator's Decision.

**IT IS SO ORDERED.**

_____
Craig A. Karsnitz

cc:    Counsel of Record
       Prothonotary's Office

FILED PROTHONOTARY
SUSSEX COUNTY
2020 MAR 16 A 9 57

10