# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RIDGEWOOD MANOR MHC, LLC, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | C.A. No.: K21A-10-002 RLG |
| RIDGEWOOD MANOR HOA, | ) ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

**Submitted: March 8, 2023**
**Decided: July 3, 2023**

*Upon Appeal from a Final Decision*
*and Order of the Arbitrator – REVERSED.*

David C. Zerbato, Esquire, Morton, Valihura & Zerbato, LLC, Greenville, Delaware, *Attorney for Appellant.*

Anthony V. Panicola, Esquire; Olga K. Beskrone, Esquire; and Colten L. Fleu, Esquire, Community Legal Aid Society, Inc., Dover, Delaware, *Attorneys for Appellee.*

**GREEN-STREETT, J.**

## I.     <u>Introduction</u>

The instant appeal stems from a dispute between the owner of a manufactured home community, Ridgewood Manor MHC, LLC, (the "Landowner") and an association that represents the affected homeowners of that community, Ridgewood Manor HOA (the "HOA").  Landowner sought an above-inflation rent increase for the homeowners in Ridgewood Manor.  The HOA objected to the above-inflation rent increase, and, under Chapter 70 of Title 25 of the Delaware Code, invoked the statutory arbitration process.

Following an arbitration hearing and submission of post-hearing briefing, the Arbitrator issued her Arbitration Decision (the "Decision") in favor of the HOA.[1] The Arbitrator found that the Landowner had not satisfied the requisite statutory preconditions to support an above-inflation rent increase.  Landowner appealed to this Court, arguing that the Arbitrator committed legal error in rendering her Decision.  This Court agrees.  For the reasons set forth below, the Decision of the Arbitrator is **REVERSED**.

---

[1] <u>See</u> <u>generally</u>, Decision, Sept. 29, 2021.

## II.   **Factual and Procedural Background**

### A. **The Rent Justification Act**

The Delaware Manufactured Homeowners and Community Owners Act – commonly referred to as the Rent Justification Act (the "Act")[2] – governs, among other things, rent increases in manufactured housing communities.[3] The Act allows a manufactured home community landowner to increase rent by the rate of inflation without showing more.[4] In order to raise rent above the average annual increase in the Consumer Price Index for All Urban Consumers in the Philadelphia-Wilmington-Atlantic City area ("CPI-U"), the landowner must satisfy three conditions as outlined in 25 Del. C. § 7052.[5]

First, the landowner must not have been found, in the preceding 12 months, to be in violation of any provision that threatens the health or safety of its residents.[6] Second, the landowner must show that the proposed rent increase is "directly related

---

[2] 25 Del. C. § 7050 et seq.

[3] 25 Del. C. § 7052. The Act has been revised, effective July 1, 2022. At the time of the Arbitrator's Decision, an old version of the Act was in place. The Court will reference old sections from Title 25 of the Delaware Code that were effective until June 30, 2022. 25 Del. C. § 7052 et seq.

[4] Bon Ayre Land, LLC v. Bon Ayre Cmty. Ass'n, 149 A.3d 227, 230 (Del. 2016) (hereinafter "Bon Ayre II"). When Bon Ayre II was decided, the Act, in relevant part, was codified as 25 Del. C. §§ 7040, 7042.

[5] Id.

[6] Id. (citing 25 Del. C. § 7052(a)(1)).

to operating, maintaining[,] or improving the manufactured home community."[7] Third, if the previous two requirements are met, the rent increase must be justified by at least one of several factors enumerated in § 7052(c).[8] The General Assembly intended for the landowner to meet *both* the directly related test *and* justify the increase with a factor under § 7052(c).[9] Ensuring a landowner meets both of these requirements is how the purpose of the Act is fulfilled.[10]

## B. **The Parties**

Ridgewood Manor is a manufactured home community located in Kent County, Delaware. Ridgewood Manor was purchased by Landowner in November 2020.[11] Soon thereafter, Landowner undertook a number of community projects. Specifically, Landowner spent $66,650.00 to renovate the property's sales/rental office; tear down a storage barn on the property; and fill an unused pool on the property ("capital expenditures").[12]

---

[7] Id. (citing 25 Del. C. § 7052(a)(2)).

[8] Id. (citing 25 Del. C. § 7052(c)).

[9] Shady Park Homeowners' Ass'n Inc. v. Shady Park MHC, LLC, 2023 WL 2366643 at *5 (Del. Super. Mar. 3, 2023) (citing Bon Ayre II, at 230).

[10] Id.

[11] Appellant's Opening Br., 3.

[12] Id. at 8.

4

On February 25, 2021, Landowner sent a letter to each homeowner within Ridgewood Manor, notifying them of (1) a 1.504% rent increase, based on the CPI-U 36-month average increase; and (2) an additional monthly rent increase based on a "market rent" analysis.[13] For most homeowners within the community, the proposed rent increase equaled approximately $50 per month.[14] At the time of Landowner's proposed rent increase, it had owned Ridgewood Manor for approximately three months.

At the statutorily required community meeting to address the proposed rent increase, Landowner provided a presentation, through which it explained the basis for its rent increase. The homeowners and HOA rejected Landowner's asserted justifications for the rent increase, and, as permitted by statute, filed a petition for arbitration. An arbitrator was appointed to hear the case. On July 22, 2021, an arbitration hearing was held.

## C. __The Arbitration Decision__

As an initial matter, the parties agreed, and the Arbitrator concluded, that Landowner satisfied the first requirement of Section 7052(a)(1): the landowner had maintained a clean bill of health in terms of safety violations for the preceding 12

---

[13] Id. at 4.

[14] Appellee's Answering Br., 3.

months.[15]  The Arbitrator then found that the three capital expenditures benefited the homeowners, and were "directly related to [ ] operating, maintaining[,] or improving the community."[16]

The Arbitrator's "directly related" analysis did not end there.  The Arbitrator performed an examination of Landowner's acquisition costs, including capital contribution, depreciation, and goodwill amortization ("Acquisition Costs").  The Arbitrator noted that neither the Act, nor existing case law, contained language that would permit the landowner to "use acquisition costs on the cost side of its ledger to prove that its original expected return [had] declined."[17]  The Arbitrator further reasoned:

> that to permit acquisition costs to offset any income in order to . . . justify a rent increase under the Act would put both the tenants and existing community owners at an unequitable disadvantage since the new owner would be unlikely to ever achieve its desired rate of return using six and seven figures for capital contribution and depreciation.[18]

The Arbitrator opined that, even if such acquisition costs were permitted to be considered under the Act, Landowner had not met its burden in producing sufficient

---

[15] Decision, 8.

[16] Id.

[17] Id. at 9.

[18] Id. at 10.

6

documentary evidence to prove that it had incurred such costs and expenses. She determined that the Acquisition Costs were not directly related to the operation, maintenance, and improvement of the community.[19] Given these conclusions, the Arbitrator did not reach the issue of whether Landowner satisfied one or more of the factors listed under 25 Del. C. § 7052(c). As a final matter, the Arbitrator granted Landowner's rent increase at CPI-U.

## III. Standard of Review

When reviewing an arbitrator's decision, the Court must independently determine (1) whether the record created in the arbitration is sufficient justification for the arbitrator's decision, and (2) whether the arbitrator's decisions are free from legal error.[20] The Delaware Supreme Court has interpreted this standard to mean that a "substantial evidence review is the appropriate standard of review for the arbitrator's factual findings."[21] Under this deferential standard, the Court's review must be limited to determination of whether the arbitrator's decision is supported by substantial evidence and free from legal error. Substantial evidence means evidence that is relevant and that a reasonable mind might accept as adequate to support a

---

[19] Id. at 9.

[20] 25 Del. C. § 7054.

[21] Sandhill Acres MHC, LLC v. Sandhill Acres Home Owners Ass'n, 210 A.3d 725, 731 n.37. (Del. 2019).

conclusion.[22]   However, issues of statutory construction and interpretation are reviewed *de novo*.[23]

## IV.   Discussion

Since its passage in 2013, the Act imposed new requirements on landowners who wished to increase rent above inflation in manufactured housing communities. Unsurprisingly, given the relative newness of the Act and perceived nuances in the statutory language, the Delaware Supreme Court was called upon to outline, with specificity, what landowners must do to comply with the Act's language and stated purpose.   At the heart of many of these appeals has been requested guidance on how landowners fulfill the conditions of § 7052.   That guidance exists in a trilogy of pertinent cases:   Bon Ayre Land, LLC v. Bon Ayre Community Association;[24] Donovan Smith HOA v. Donovan Smith MHP, LLC;[25] and Sandhill Acres MHC, LLC v. Sandhill Acres Home Owners Association.[26]

---

[22] December Corp v. Wild Meadows HOA, 2016 WL 3866272 at *4 (Del. Super. July 12, 2016).

[23] Bon Ayre II, at 233.

[24] Bon Ayre II.

[25] 190 A.3d 997 (Del. 2018) (TABLE).

[26] 210 A. 3d 725 (Del. 2019).

8

### A. The Directly Related Standard: Bon Ayre II, Donovan Smith, and Sandhill

#### 1. Bon Ayre II

In <u>Bon Ayre II</u>, the Delaware Supreme Court recognized that "the Act is effectively a rent control statute."[27] "Its stated purpose is to 'accommodate the conflicting interests of protecting manufactured homeowners, residents, and tenants from unreasonable and burdensome space rental increases[,] while simultaneously providing for the need of manufactured home community owners to receive a just, reasonable, and fair return on their property.'"[28] "To accomplish this purpose, the Act allows landowners to increase their rent by an inflation measure – CPI-U – without any opportunity for homeowners to object."[29] To increase rent above the CPI-U, a landowner must engage the test outlined in § 7052.[30] Specifically, the <u>Bon Ayre II</u> court held that the § 7052 test was conjunctive: a landowner wishing to increase rent above the CPI-U must show that the proposed rent increase is *both* directly related to operating, maintaining, or improving the manufactured home

---

[27] 149 A.3d at 234 (The <u>Bon Ayre II</u> decision references compliance with 25 <u>Del</u>. <u>C</u>. §§ 7040, 7042.).

[28] <u>Id.</u> (citing 25 <u>Del</u>. <u>C</u>. § 7050).

[29] <u>Id</u>. at 230.

[30] <u>Id</u>.

community, *and* that the increase is justified by one or more of the eight factors listed under subsection (c) of Section 7052.[31]

The Bon Ayre II court interpreted the "directly related" requirement to mean that the landowner "must show that its original expected return has declined, because the cost side of its ledger has grown."[32] This showing was deemed to be a "modest one," only requiring the landowner to produce evidence to suggest its return on its property had declined.[33] Very simply, "when a landowner [had invested] in improving [its] community, it [could] reap the benefits of increasing the rent above inflation rates."[34]

### 2. **Donovan Smith**

The ultimate instructional takeaway from Donovan Smith concerned the discovery of landowners' books and records for homeowners to fairly test the landowners' cost and financial representations. Embedded in this holding, however, was the Delaware Supreme Court's affirmance of what satisfies a "directly related" cost expenditure. Although affirmed on a case-specific, narrow basis, the Donovan Smith court reconfirmed the relatively low threshold landowners needed to meet to

---

[31] Id. at 233-34.

[32] Id. at 234.

[33] Id. at 235-36.

[34] Shady Park Homeowners' Ass'n, 2023 WL 2366643 at *5 (citing Bon Ayre II, at 234).

trigger an analysis of the § 7052(c) factors. The addition of a driveway to each unit of a community and repainting a maintenance building were deemed sufficient "door opener" costs to move to the last prong of § 7052's test.[35]

3. **Sandhill**

This "directly related," "door opener" threshold was further clarified in Sandhill. In Sandhill, the Delaware Supreme Court expressly disavowed any reading of the Act that required a landowner to offer evidence of its original costs and expected return to satisfy the "directly related" test:

> [t]here is no basis in the Act to infer such a requirement. Rather the proposed rent increase need only be "directly related to . . . improving the manufactured home community." To make a *prima facie* case that a rent increase is directly related to improving the community – a requirement that we have previously described as "modest" – it suffices for the community owner to offer evidence that in making some capital improvement, the community owner has incurred costs that are likely to reduce its expected return.[36]

The Sandhill court then explained that some correlation between the cost expenditure and proposed rent increase was required. Specifically, a landowner could not expend minimal or nominal cost only to turn around and request a disproportionate rent increase. "To satisfy [the directly related] requirement, there

---

[35] Donovan Smith, 2018 WL 3360585 at *3 (Del. 2018) (TABLE). The Donovan Smith opinion references compliance with 25 Del. C. §§ 7040, 7042.

[36] Sandhill, 210 A.3d at 729.

11

[needed to] be a material capital expenditure or increase in operational or maintenance expenses that [had] a substantial relationship to the rent increase sought."[37]  "If a landowner [could] show that its costs [had] gone up, that [*opened*] *the door* to a rent increase based on § 7052(c)'s factors, including market rent."[38]

Those three cases – <u>Bon Ayre II</u>, <u>Donovan Smith</u>, and <u>Sandhill</u> – outlined an analytical framework for what constitutes and satisfies "directly related."  In sum, the directly related requirement is met if a landowner "offer[s] evidence that[,] in making some capital improvement[,] [landowner] has incurred costs that are likely to reduce its expected return."[39]  The "justification" process outlined by the Act – and clarified by the Delaware Supreme Court – was intended to be moderate, equitable, and balanced.

**B.     The Arbitrator Committed Legal Error by Misinterpreting and Misapplying § 7052**

As previously outlined, a landowner is permitted to raise a homeowner's rental rate above the average annual CPI-U increase if the landowner can justify the conditions set forth in 25 <u>Del. C</u>. § 7052.  There is no dispute here that Landowner satisfied 25 <u>Del</u>. <u>C</u>. § 7052(a), and maintained the requisite clean bill of health in

---

[37] <u>Id</u>.

[38] <u>Donovan Smith</u>, 2018 WL 3360585 at *1 (emphasis added).

[39] <u>Sandhill</u>, 210 A.3d at 729.

terms of safety violations. Accordingly, the Arbitrator found that Landowner satisfied this initial qualifying condition.

With this first hurdle cleared, Landowner needed to demonstrate that the proposed rent increase was "directly related to operating, maintaining, or improving the manufactured home community."[40] The Arbitrator concluded that the three capital expenditures, totaling $66,650.00, were directly related to operating, maintaining, or improving the community:

> Based on the testimony and evidence presented[,] there is no doubt that the removal of the barn and swimming pool and repairs and improvements to the sales office were related to the operation, maintenance, and improvement for the management of Ridgewood Manor . . . . these three (3) capital improvements benefited the homeowners in some manner however tenuous it may be. I, therefore, conclude that the three (3) capital improvements, totaling $66,650[.00] (amount claimed in PowerPoint presentation to homeowners) are directly related to operating, maintaining[,] or improving the community.[41]

With the Arbitrator's finding that the "door opener" costs were related to the rent increase, the next step of her review should have been to consider any relevant § 7052(c) factors – in this case, market rent. That review did not occur.

---

[40] 25 Del. C. § 7052 (a)(2).

[41] Decision, 8.

13

Instead, the Arbitrator added an additional layer of "directly related" analysis not required by the Act. She outlined the issue as one of first impression:

> [t]he critical issue that I need to resolve is whether a landowner, regardless of whether they were or were not the purchaser of the mobile home community may claim costs of acquisition, including capital contribution, mortgage interest, depreciation[,] and goodwill amortization, as costs "directly related to operating, maintaining[,] or improving the manufactured home community" or, put another way, use such acquisition costs, on the cost side of its ledger, to prove that its expected rate of return has decreased or has not been met.[42]

The Arbitrator exceeded her authority with the addition of this "first impression" layer of analysis. Contrary to the Supreme Court's guidance, the Arbitrator proceeded to hold Landowner to a markedly higher evidentiary standard than required by the precedential "modest" burden outlined by Bon Ayre II and its progeny. The Arbitrator expanded the "directly related" test to Landowner's cost and expense associated with the acquisition of Ridgewood Manor.

It is undisputed that Arbitrator found that Landowner met the first two statutory requirements to raise rent above inflation: (1) it had no health or safety violations in accordance with 25 Del. C. § 7052(a)(1); and (2) Landowner satisfied 25 Del. C. § 7052(a)(2), as it spent $66,650.00 to improve the community. The Arbitrator, albeit with virtually no explanation, made this express finding about the

---

[42] Decision, 9.

14

$66,650.00. This expense was a direct reduction of Landowner's income by $66,650.00. The next step of the established analytical and statutory framework required the Arbitrator to analyze the § 7052(c) factors. Instead, after determining the capital expenditures were directly related to the operation, maintenance, and improvement of the community, she applied the same directly related standard to the Acquisition Costs. The Arbitrator misapplied the § 7052 test – and this misapplication constitutes legal error.

C. **The Arbitrator Committed Legal Error by Creating an Analytical Schematic Inconsistent with the Statutory Framework**

Much of the briefing and oral argument in this case outlined and discussed, at great length, Landowner's financials, Landowner's return on its investment, and discovery issues below. This Court finds much of this extended discussion superfluous to the central issue of this appeal. Hyperfocus on accounting and business principles here misses the mark.

According to the Delaware Supreme Court, neither this Court nor an Arbitrator can "impos[e] a requirement on the community owner that the statute does not contain."[43] Whether application of a two-tiered "directly related" standard or insertion of an equitable standard,[44] the Arbitrator cannot superimpose requirements

---

[43] Sandhill, 210 A.3d at 729.

[44] The Arbitrator hinted at, although did not directly apply, the following: "[T]o allow such acquisition costs to offset any income in order to create the "door opener" to justify a rent increase under the Act would put both the tenants and existing community owners at an unequitable

onto the Act that are not evident in the statutory language. In 2021, the Delaware Supreme Court reiterated that "the role of the arbitrator under the Act is to render a decision employing the standards under § 7052."[45] Here, the Arbitrator employed a different standard.

By not following § 7052's analytical framework, the Arbitrator diverted from the standards set forth by the Act. This diversion resulted in conflation of the legal issues – and the imposition of a heightened burden on Landowner not found in the Act. The Arbitrator found the capital expenditures to be "door opener" costs directly related to the rent increase. To meet its *prima facie* burden, a landowner must offer evidence that, in making some capital improvement, the community owner incurred costs that are likely to reduce its expected return.[46] A homeowner then becomes entitled to rebut that *prima facie* case by offering evidence that the expenditure does not, in fact, reflect any increase in costs – for example, because the expenditure was offset by reduced expenses in other areas.[47]

---

disadvantage since the new owner would be unlikely to ever achieve its desired rate of return using six and seven figures for capital contribution and depreciation." Decision, 10.

[45] Rehoboth Bay Homeowners' Ass'n v. Hometown Rehoboth Bay, LLC, 252 A.3d 434, 442 (Del. 2021).

[46] Sandhill, 210 A.3d at 729.

[47] Id.

After finding that Landowner had demonstrated its *prima facie* case, Arbitrator did not burden-shift appropriately – namely, require the HOA to show that the capital expenditures were offset by reduced expenses in other areas. Rather, the Arbitrator reutilized the "directly related" standard to analyze the Acquisition Costs. This analysis resulted in the Acquisition Costs being carved out of Landowner's financials, which contributed to the Arbitrator's finding that Landowner could not meet its § 7052(a)(2) burden. By making this finding, the Arbitrator recalibrated Landowner's burden from "modest" to substantial. This recalibration created a higher standard for Landowner to meet with no support in the Act itself. The imposition of this burden constitutes legal error and cannot stand.

## V.  Conclusion

The case presented to this Court on appeal pivots around the Arbitrator's determination that Landowner failed to meet the statutory preconditions to seek an above-inflation rent increase. Specifically, in denying Landowner's proposed rent increase, the Arbitrator concluded that it had failed to meet its burden under 25 Del. C. § 7052(a)(2). Arbitrator substituted a legal standard and analysis inconsistent with the current status of Delaware law. This substitution constitutes legal error. Accordingly, the Arbitrator's decision must be **REVERSED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge