# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WILD MEADOWS MHC, LLC,       :

           Petitioner,      :

      v.                          :

                              :

DAVID J. WEIDMAN, ESQUIRE,    :
ARBITRATOR,                    :

                              :

           Respondent,    :

      and                        :

                              :

WILD MEADOWS HOMEOWNERS'    :
ASSOCIATION,                   :

                              :

      Intervenor-Respondent.   :

C.A. No. K19M-07-003 NEP
In and for Kent County

Submitted: June 18, 2020
Decided: July 10, 2020

## MEMORANDUM OPINION AND ORDER

Upon Respondent's Motion to Dismiss
**GRANTED**

Upon Intervenor-Respondent's Motion to Dismiss
**GRANTED**

Upon Petitioner's Motion for Judgment on the Pleadings
**DENIED**

Michael P. Morton, Esquire (argued), Robert J. Valihura, Jr., Esquire, and David C. Zerbato, Esquire, Morton, Valihura & Zerbato, LLC, Attorneys for Petitioner Wild Meadows MHC, LLC.

James P. Sharp, Esquire, Moore & Rutt, P.A., Attorney for Respondent David J. Weidman, Esquire, Arbitrator.

Olga K. Beskrone, Esquire, Community Legal Aid Society, Inc., Attorney for Intervenor-Respondent Wild Meadows Homeowners' Association.

**Primos, J.**

Wild Meadows MHC, LLC (hereinafter "Wild Meadows"), has filed a Petition for a Writ of Prohibition (hereinafter the "Petition") against Respondent David J. Weidman, Esquire (hereinafter "Weidman"). In response, both Weidman and Intervenor-Respondent the Wild Meadows Homeowners' Association (hereinafter the "HOA")[1] have filed Motions to Dismiss. Wild Meadows itself has filed a Motion for Judgment on the Pleadings. Upon review of the written submissions and following oral argument, the Motions to Dismiss of Weidman and the HOA are **GRANTED**, and Wild Meadows's Motion for Judgment on the Pleadings is **DENIED**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Wild Meadows manufactured home community (hereinafter the "Community") is located in Dover, Delaware. Each resident in the Community owns his or her home and rents the lot upon which the home is located from Wild Meadows, the community owner.

On October 31, 2018, Wild Meadows sent a letter to certain homeowners in the Community whose year-long leases were set to expire, notifying them that it would be raising their lot rent above the average annual increase of the Consumer Price Index, or "CPI-U,"[2] pursuant to the Rent Justification Act (hereinafter the "Act").[3] Wild Meadows subsequently held a meeting with the affected homeowners

---

[1] The Court granted the HOA's Motion to Intervene on November 22, 2019.

[2] The CPI-U is "the average annual increase of the Consumer Price Index for All Urban Consumers in the Philadelphia-Wilmington-Atlantic City area." Former 25 *Del. C.* § 7042(a). Pursuant to the requirements of the Rent Justification Act, the CPI-U "for the most recently available preceding 36-month period" is used. *Id.*

[3] Former 25 *Del. C.* § 7040 to 7046. Effective December 10, 2019, the Act was redesignated (*i.e.,* renumbered) and amended. This Opinion will cite the former statutes as they existed prior to the amendments, because the issues in question arose prior to the Act's redesignation. *See Wild Meadows Homeowners Association v. Wild Meadows MHC, LLC,* 2020 WL 2070339, at *1 n. 3 (Del. Super. Apr. 28, 2020) (citing former version of the Act because events in question occurred prior to the Act's redesignation). Notably, these changes to the Act did not make any substantive

2

of the Community to discuss the rent increase.[4] However, certain of the homeowners chose not to accept the rent increase and filed a petition through the HOA with the Delaware Manufactured Home Relocation Authority (hereinafter the "Authority") seeking the appointment of an arbitrator to determine whether the rent increase was justified under the Act.[5]

The Authority chose Weidman to be the arbitrator in this case. Prior to the scheduled arbitration, the HOA filed a motion for summary judgment and a motion to compel the production of certain documents, including financial documents relating to Wild Meadows's operations. On January 18, 2019, Weidman issued a decision (hereinafter the "First Decision") denying the HOA's motion for summary judgment but granting the motion to compel in part, ordering Wild Meadows to produce those financial documents that it planned to introduce or rely upon at the arbitration in addition to certain other non-financial documents related to the proposed rent increase.

After Weidman issued the First Decision, the Supreme Court issued its opinion in *Sandhill Acres MHC, LC v. Sandhill Acres Homeowners Association*, 210 A.3d 725 (Del. 2019). Prior to the issuance of this decision, the HOA had filed a Motion for Reconsideration, arguing that the financial documents to which it had been denied access in the First Decision were indeed discoverable. In a June 7, 2019, decision on the Motion for Reconsideration (hereinafter the "Second Decision"),

---

changes with regard to the issues in this case. Therefore, the parties are not now subject to a different set of rules under the Act than they were prior to these changes.

[4] This meeting is required under the Act. *See* former 25 *Del. C.* § 7043(b) ("If the proposed rent increase exceeds the CPI-U, the Authority shall schedule a final meeting between the parties at a mutually-convenient time and place to be held within 30 days from the mailing of the notice of the rent increase, to discuss the reasons for the increase.").

[5] *See* former 25 *Del. C.* § 7043(c) ("[A]ny affected home owner who has not already accepted the proposed increase, or the home owners' association on the behalf of 1 or more affected home owners who have not already accepted the proposed increase may . . . petition the Authority to appoint a qualified arbitrator to conduct nonbinding arbitration proceedings.").

3

Weidman looked to *Sandhill Acres* and agreed with the HOA that the requested documents were discoverable, thereby amending the First Decision and expanding the scope of discoverable information.

In the Second Decision, Weidman ordered Wild Meadows to submit a proposed Confidentiality Agreement and ordered the HOA, in response, to submit any comments regarding the proposal. Weidman further provided that, if the parties could not agree on the proposal, he would issue a final Confidentiality Agreement.

On June 26, 2019, following the parties' inability to reach consensus, Weidman issued a final draft Confidentiality Agreement. While he did not agree with the majority of the HOA's requested edits to Wild Meadows's original proposal, he rejected Wild Meadows's request for an "attorneys' eyes only" limitation and instead expanded the class of persons who could review the documents to include those directors, officers, or Board members of the HOA who would be attending the arbitration, requiring those individuals to agree to be bound by the Confidentiality Agreement in order to view the confidential documents. Weidman ordered the parties to sign and return the Confidentiality Agreement by July 3, 2019.

Wild Meadows refused to execute the Confidentiality Agreement and on July 3, 2019, filed the Petition, requesting that this Court, *inter alia*, prohibit Weidman from "ordering [Wild Meadows] to produce documents or engage in discovery of matters not to be used or relied upon by Wild Meadows in the arbitration" and from "ordering [Wild Meadows] to agree to a Confidentiality [Agreement] which [Wild Meadows] will not accept . . . ."[6] As noted *supra*, Weidman and the HOA have moved to dismiss the Petition, and Wild Meadows has moved for judgment on the pleadings.

---

[6] Petition at 17, ¶¶ 2-3.

Wild Meadows argues that it is entitled to a writ of prohibition because Weidman acted outside the scope of his jurisdiction when he compelled the discovery of documents and required the parties to sign the Confidentiality Agreement, as neither of these measures is explicitly named in the Act as falling within the arbitrator's powers. Wild Meadows states that absent the writ, it will suffer "irreparable harm" because Weidman's Second Decision and the Confidentiality Agreement will allow Wild Meadows's competitors to "gain an enormous tactical and strategic advantage, to the permanent detriment of [Wild Meadows]," given the sensitivity of the information within the documents required to be produced in discovery.[7] Lastly, Wild Meadows claims that it has no adequate alternative remedies.

Weidman maintains that he did not exceed his jurisdiction as arbitrator. According to Weidman, Delaware Supreme Court jurisprudence has established that an arbitrator has authority not only to compel discovery of financial records requested by a homeowners association, but also to condition the discovery as he deems fit. Weidman also asserts that an arbitrator is not a "tribunal," and because a writ of prohibition may be issued by the Superior Court only to an inferior tribunal, Wild Meadows's requested relief is inappropriate. In addition, Weidman contends that a writ of prohibition is unavailable because Wild Meadows has an adequate alternative remedy, *i.e.*, injunctive relief through the Court of Chancery.

The HOA also asserts that Weidman did not exceed his jurisdiction as arbitrator. Moreover, the HOA argues that Wild Meadows has an adequate remedy at law, *i.e.*, an appeal to this Court following the conclusion of the arbitration.

---

[7] *Id.* at ¶ 33.

## II.   STANDARD OF REVIEW

On a motion to dismiss, the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of its [complaint] would the [plaintiff] be entitled to relief."[8] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[9]

Similarly, a motion for judgment on the pleadings may be granted when there is no issue of material fact and the moving party is entitled to judgment as a matter of law.[10] Indeed, the standard for a motion for judgment on the pleadings is "almost identical" to that for a motion to dismiss.[11]

Here, the parties have acknowledged, either explicitly or implicitly, that there is no dispute as to the applicable facts in this matter.[12] Therefore, this matter will be decided based upon the facts reflected in the pleadings and briefs of the parties, with the exception of certain exhibits discussed *infra*.[13]

---

[8] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).

[9] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal citations and quotations omitted).

[10] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[11] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Jan. 17, 2014) (internal quotations omitted).

[12] *See* Wild Meadows Jan. 10, 2020, Br. at 17; HOA May 22, 2020, Br. at 10. Presumably, Weidman also agrees that the relevant facts are undisputed because those facts concern his discovery-related decisions during the course of the arbitration as memorialized in certain written documents – *i.e.*, the First Decision, the Second Decision, and the draft Confidentiality Agreement.

[13] *Cf. Spine Care Delaware, LLC v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 5581441 (Del. Super. Oct. 29, 2019) (deciding matter on record at bar when parties agreed there was no genuine issue of material fact and matter was ripe for decision on the merits).

In that regard, the Court need not, and will not, convert the HOA's Motion to Dismiss into one for summary judgment in response to the HOA's submission of certain exhibits in support of its Motion. Generally, when a court refers to matters outside the pleadings on a motion to dismiss, the motion must be converted to one for summary judgment.[14] However, the issue before the Court is strictly procedural,[15] and thus the Court will not reach the merits of the HOA's substantive arguments regarding whether Wild Meadows can justify the proposed rent increase,[16] nor will the Court refer to the exhibits that the HOA has offered in support of its Motion to Dismiss.[17] Therefore, the Motion to Dismiss will not be converted to one for summary judgment and will be decided based on the pleadings and briefs of the parties, excluding, as noted *supra*, the exhibits submitted by the HOA, but *including* the exhibits attached to the Petition (*i.e.*, the First Decision, the Second Decision, and Weidman's June 26, 2019, email correspondence to the arbitration parties attaching the final draft Confidentiality Agreement).

## III.  DISCUSSION

### A. Weidman, as a quasi-judicial officer, is subject to the issuance of a writ of prohibition by this Court.

As an initial matter, this Court may issue a writ of prohibition if it concludes that such an extraordinary remedy is appropriate.[18] A writ of prohibition is the legal equivalent of an injunction whereby the court issues the writ to prevent a lower court

---

[14] *Malpiede v. Townson*, 780 A.2d 1075, 1092 (Del. 2001).

[15] *See Mehiel v. Solo Cup Co.*, 2005 WL 1252348, at *6 (Del. Ch. May 13, 2005) ("the scope of the arbitrator's authority to compel discovery is a procedural question").

[16] HOA Jan. 31, 2020, Br. at 14-16. Indeed, because Weidman himself has not reached a decision on this substantive issue, it would be improper for this Court to address the HOA's arguments on this matter.

[17] *Id.* Exhibits 1-6.

[18] 10 *Del. C.* § 562; *see also Family Court v. Dep't of Labor*, 320 A.2d 777, 779 (Del. Ch. 1974) ("the Superior Court has the power to issue all common law writs including the writ of prohibition").

or other tribunal from exceeding its jurisdiction.[19] Delaware courts have explained that a writ of prohibition may be issued only if the lower entity's lack of jurisdiction is manifest on the record[20] and the petitioner has no adequate alternative remedy at law to correct the alleged error.[21] In other words, to succeed on a motion for a writ of prohibition, the movant must demonstrate, by clear and convincing evidence, that the lower entity abused, *i.e.*, exceeded, its jurisdiction and that alternate legal remedies are inadequate.[22] As noted *supra*, a writ of prohibition is an extraordinary remedy[23] and is therefore to be used only in cases of great necessity.[24]

Weidman asserts that this Court may issue a writ of prohibition only to a "tribunal,"[25] and argues that because he is not a tribunal, this Court may not issue such a writ to him. In support of this argument, Weidman states that as an arbitrator he is not a tribunal because he does not qualify as one according to Black's Law Dictionary.[26] Specifically, Weidman points out that Black's Law Dictionary defines a "tribunal" as "a court or other adjudicatory body," and a "body" as "an aggregate of individuals or groups."[27] Wild Meadows counters with its own citation from a legal dictionary, arguing that a "tribunal" is "anyone who sits in the judgment of others."[28]

---

[19] *In re Webb*, 65 A.3d 617, 2013 WL 1871699, at *1 (Del. May 2, 2013) (TABLE).
[20] *Id.*
[21] *In re Dennison*, 892 A.2d 1083, 2006 WL 197164, at *1 (Del. Jan. 24, 2006) (TABLE).
[22] *Milford Sch. Dist. v. Whiteley*, 401 A.2d 951, 953 (Del. 1979); *In re Mahan*, 55 A.3d 839, 2012 WL 5417075, at *1 (Del. Nov. 5, 2012) (TABLE).
[23] *In re Webb*, 2013 WL 1871699, at *1.
[24] *Knight v. Haley*, 176 A. 461, 465 (Del. 1934).
[25] Weidman Jan. 31, 2020, Br. at 11 (citing *Matushefske v. Herlihy*, 214 A.2d 883, 885 (Del. 1965) ("a writ of prohibition will issue from a Superior Court to an inferior tribunal only for the purpose of preventing the inferior tribunal from exceeding the limits of its jurisdiction")).
[26] *Id.* at 11-12.
[27] *Id.* at 12.
[28] Wild Meadows Apr. 14, 2020, Br. at 3 (citing Wolters Kluwer Bouvier Law Dictionary).

Given the fact that the Court's decision on this issue will lay the foundation for the rest of this Opinion,[29] the Court will not resolve this issue based on a choice between two non-binding definitions. In short, neither Weidman's argument nor Wild Meadows's argument, both of which speak to the legal-dictionary definition of "tribunal," is persuasive.

Weidman also cites *In Matter of Petition of Fatir*, 223 A.3d 95, 2019 WL 6271180 (Del. Nov. 22, 2019) (TABLE), to argue that writs of prohibition "only apply to lower courts and adjudicatory bodies," and that Weidman, as an arbitrator, is neither of these entities.[30] In *Matter of Fatir*, the Delaware Supreme Court denied an inmate's petition to that Court for a writ of prohibition to the Board of Pardons[31] because the Supreme Court's original jurisdiction allows the issuance of writs of prohibition only to inferior courts and to judges of those courts, not to an administrative board.[32] However, because the Superior Court's original jurisdiction is not explicitly limited in that way,[33] this Court's jurisdiction to issue writs of

---

[29] *I.e.*, if Weidman is subject to a writ of prohibition, then the Court may render a decision on the deeper issue at bar, and if he is not, then the analysis ends here.

[30] Weidman Jan. 31, 2020, Br. at 12. Weidman also cites *Pots-Nets Coveside Homeowners Ass'n v. Tunnell Companies, L.P.*, 2015 WL 3430089 (Del. Super. May 26, 2015) in support of his contention that the General Assembly intended to limit the Superior Court's jurisdiction over disputes arising under the Act. This decision is not persuasive because it did not address whether this Court has the authority to issue a writ of prohibition against an individual arbitrator.

[31] Fatir, an inmate, sought a writ of prohibition to prevent the Board from requiring that he reapply for a positive recommendation before applying to the Governor for a commutation of his sentence. *Matter of Fatir*, 2019 WL 6271180, at *1.

[32] *Id.* (citing Del. Const. art. IV, § 11(5) (Supreme Court has jurisdiction "[t]o issue writs of prohibition, quo warranto, certiorari and mandamus to the Superior Court, and the Court of Chancery, or any of the Judges of the said courts and also to any inferior court or courts established or to be established by law and to any of the Judges thereof and to issue all orders, rules and processes proper to give effect to the same.")).

[33] *See* Del. Const. IV. § 7 ("The Superior Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law and all the other jurisdiction and powers vested by the laws of this State in the formerly existing Superior Court; and also shall have all the jurisdiction and powers vested by the laws of this State in the formerly existing Court of General Sessions of the Peace and Jail Delivery; and also shall have all the jurisdiction and powers vested by the laws of this State in the formerly existing Court of General Sessions; and also shall have all

prohibition extends beyond state courts and state judicial officers. Therefore, *Matter of Fatir* was decided on grounds that are inapplicable to this Court.

Like Weidman, Wild Meadows focuses its argument on the term "tribunal." Wild Meadows cites *LG Electronics, Inc. v. InterDigital Communications, Inc.*,[34] where the parties had entered into a nondisclosure agreement that was to be enforced before "any court, agency, or *tribunal.*"[35] The issue before the Court arose from a dispute between the parties as to whether certain information could be disclosed to an arbitration panel. In rendering its decision, the Supreme Court stated that "the term 'tribunal' has long been understood to encompass arbitral tribunals, including the one deciding the underlying dispute."[36] This decision is inapposite, however, because it did not involve a writ of prohibition. Additionally, *LG Electronics* specifically held that an arbitration *panel* is a tribunal, but Weidman acted alone, *i.e.*, he was not a member of a multi-arbitrator panel.

To the Court's knowledge, there is no Delaware authority speaking directly to whether this Court may issue a writ of prohibition to an individual arbitrator.

---

the jurisdiction and powers vested by the laws of this State in the formerly existing Court of Oyer and Terminer."); 10 *Del. C.* § 562 (no requirement that writs of prohibition from Superior Court be issued only to inferior courts).

[34] 114 A.3d 1246 (Del. 2015).

[35] *Id.* at 1248 (emphasis in original).

[36] *Id.* at 1249. In support of its contention that an individual arbitrator is a tribunal, Wild Meadows quotes from Exhibit A of the *LG Electronics* Opinion, wherein the Supreme Court stated during oral argument that an "[a]rbitration tribunal is a tribunal." *Id.* at 1272. However, because this statement is not part of a written opinion, it is not as controlling as Wild Meadows suggests. Moreover, Wild Meadows appears to have taken this statement out of context, because when making this statement the Supreme Court was merely paraphrasing the reasoning of the Court of Chancery below, not declaring that it was agreeing with the Court of Chancery's conclusion that an arbitration panel is a tribunal. *See id.* ("You go to the Court of Chancery. Court of Chancery says, you know what? Arbitration tribunal is a tribunal. It has equitable authority. It was the first contractually named tribunal court or agency seized with the question, and under McWane we're not supposed to have two tribunals doing the same thing at once. And this is also analogous to a well-settled line of law about arbitrators getting to decide evidentiary disputes and I'm just going to follow this sort of pretty moderate course of action.").

Nonetheless, a review of the original statute that confers power upon this Court to issue a writ of prohibition establishes that the Court does indeed have the authority to issue a writ of prohibition to Weidman as an arbitrator.

Pursuant to 10 *Del. C.* § 562, this Court "may frame and issue all remedial writs . . . . All writs shall be granted . . . as the particular case may require."[37] The statute does not mention the term "tribunal," nor does it specify which entities are subject to a writ of prohibition issued by this Court.

Delaware courts, when addressing the issuance of writs of prohibition by this Court, have used the term "tribunal" to describe the entity at issue *in that case*, not to create a rule of law confining future courts to that term.[38] Indeed, when Delaware courts determine whether to issue a writ of prohibition, they address whether the lower judicial or quasi-judicial entity exceeded its jurisdiction, not whether it was a "tribunal."

As a case in point, in *Whiteley*, this Court, after noting that a writ of prohibition is appropriate only "in cases of usurpation or abuse of jurisdiction by a lower *tribunal*," proceeded to determine whether the Delaware Secretary of Labor had exceeded his jurisdiction in establishing a bargaining unit for a school district's custodial employees.[39] The Court never considered whether the Secretary, as an individual state officer, not a judge or a court, is a "tribunal" and thus not subject to such a writ.[40]

---

[37] *See* n. 18, *supra.*
[38] *See, e.g., Whiteley*, 401 A.2d at 953 (considering issuance of writ from Superior Court to Delaware Secretary of Labor); *Matushefske*, 214 A.2d at 885 (considering issuance of writ from Superior Court to Court of Common Pleas and Justice of the Peace); *Knight*, 176 A. at 464-65 (considering issuance of writ from Superior Court to Justice of the Peace).
[39] 401 A.2d at 953 (emphasis supplied).
[40] *See also Family Court*, 320 A.2d at 780 (Court of Chancery held that Superior Court has jurisdiction to issue writ of prohibition to administrative body exercising quasi-judicial functions, in that case the Delaware Department of Labor).

In short, the issue before this Court is not whether Weidman, as an arbitrator, meets a legal-dictionary definition of "tribunal," but instead whether Weidman, as a quasi-judicial officer appointed pursuant to Delaware law – in particular, the rent justification provisions of the Act – exceeded his jurisdiction. Having determined that this Court may issue a writ of prohibition to Weidman, the Court will now determine whether Weidman exceeded his jurisdiction during the arbitration, and if so, whether Wild Meadows has an adequate alternative remedy at law.[41]

## B. Weidman did not exceed his jurisdiction during the arbitration proceedings.

### 1. Weidman did not exceed his jurisdiction as the arbitrator when he ordered Wild Meadows to disclose information requested by the HOA.

#### a. Weidman appropriately relied upon Supreme Court authority in ordering the production of information by Wild Meadows.

The Delaware Supreme Court has determined that under the Act, an arbitrator has the authority to compel, and limit, discovery during arbitration proceedings regarding a proposed rent increase. When he issued the Second Decision in June 2019, Weidman had the benefit of both Supreme Court opinions addressing this principle,[42] and properly found that he could not only compel Wild Meadows to produce certain documents, but also limit the discovery to protect the privacy of the information contained therein.

---

[41] *See Whiteley*, 401 A.2d at 953 ("[T]he extraordinary writ of prohibition is only appropriate in cases of usurpation or abuse of jurisdiction . . . and even then only if other existing remedies are inadequate to afford relief.")

[42] *Donovan Smith HOA v. Donovan Smith MHP, LLC*, 190 A.3d 997, 2018 WL 3360585 (Del. July 18, 2018) (TABLE); *Sandhill Acres, supra.*

In *Donovan Smith HOA v. Donovan Smith MHP, LLC*, the Supreme Court affirmed the arbitrator's holding that the proposed rent increase was permissible under the Act.[43] However, the Supreme Court rejected the Superior Court's holding that a community owner may seek a rent increase above the CPI-U and simultaneously refuse to allow the homeowners to examine the community owner's books and records necessary to determine whether the proposed rent increase is "directly related to operating, maintaining or improving the manufactured home community" as required by the Act.[44] The Supreme Court explained that in response to a request by the homeowners, a community owner seeking to raise lot rent above the CPI-U must produce its business records for the contesting homeowners to review so that they may test the assertion that the rent increase is justified under the Act.[45] More importantly for the matter before this Court, the Supreme Court recognized that the arbitrator may control the production of such documents by imposing "appropriate conditions" to address confidentiality concerns, and may "require production" of the relevant books and records if the homeowners "fairly demand" their discovery.[46]

In *Sandhill Acres*, the Supreme Court reversed this Court and thus affirmed the arbitrator's holding that the community owner had justified the rent increase under the Act.[47] However, expanding on its statements in *Donovan Smith* regarding discovery, the Supreme Court declared that a community owner seeking a rent increase above the CPI-U is not in an "equitable or legal position to resist a reasonable request for information about its costs and profit margins" designed to

---

[43] 2018 WL 3360585, at *2.
[44] *Id.* at *2-3; *see also* former 25 *Del. C.* § 7042(a)(2) ("directly-related" requirement is prerequisite for above-inflation rent increase).
[45] 2018 WL 3360585 at *3.
[46] *Id.*
[47] *Sandhill Acres*, 210 A.3d at 732.

13

test its "directly-related" claim.[48]  Indeed, a community owner seeking to increase lot rent above the CPI-U must make a decision – either refrain from seeking an above-inflation rent increase and keep its financial information from the eyes of others, or seek such an increase and be willing to justify it by revealing relevant documents.[49]  Furthermore, the Supreme Court again confirmed the arbitrator's power to oversee and direct such discovery by addressing "legitimate confidentiality and proprietary concerns . . . through the imposition of use restrictions" and by denying "excessively burdensome requests for information."[50]

Wild Meadows argues that the arbitrator's role under the Act, far from including discovery powers, is limited to determining whether the community owner has presented sufficient information to justify the rent increase.[51]  The Supreme Court obviously sees the arbitrator's role differently: while the community owner bears a "modest" initial burden in a "directly-related" arbitration of merely showing that it (*i.e.*, the community owner) "has incurred costs that are likely to reduce its expected return,"[52] the homeowners have the right to test that assertion by demanding the production of relevant financial information – a right that the arbitrator is empowered to enforce.

Wild Meadows, however, asserts that the statements in *Donovan Smith* and *Sandhill Acres* regarding discovery are *dicta* and therefore not authoritative.  In the strictest sense, to be sure, the Supreme Court's statements regarding the production of financial information were not essential to the decision in either case, because in both cases the homeowners had failed to request the relevant books and records

---

[48] *Id.* at 731.
[49] *Id.*
[50] *Id.*
[51] Wild Meadows Apr. 14, 2020, Br. at 19-20.
[52] *Sandhill*, 210 A.2d at 729.

during the arbitration proceedings.[53] This does not mean, however, as Wild Meadows contends, that the Supreme Court's pronouncements carried no authoritative weight, or that subsequent judicial – and quasi-judicial – entities are not obligated to follow them.

When a court refers to "*dicta*," it is often referring to "*obiter dicta*," which are statements or comments made "by the way."[54] *Obiter dicta* are not binding precedent and therefore need not be followed by a lower court.[55] In contrast, a court's "expression of opinion upon a point in a case argued by counsel and deliberately passed upon . . . though not essential to the disposition of the cause, if *dictum*, is a judicial *dictum*."[56] Judicial *dictum* is entitled to much weight and should be followed unless it is erroneous.[57]

Here, the Supreme Court's statement in *Donovan Smith* (later confirmed in *Sandhill Acres*[58]) that a community owner must be willing to produce relevant documents if it wishes to increase lot rent above the CPI-U[59] was judicial *dictum* because it addressed an issue relevant but not dispositive to the issues at bar – *i.e.*,

---

[53] *See Donovan Smith*, 2018 WL 3360585, at *3 (explaining that Superior Court had erroneously stated that community owner had no obligation to produce its financial records, but nonetheless affirming because homeowners had failed at arbitration to request production of records or to argue that community owner was required to produce them); *Sandhill Acres*, 210 A.3d at 729, 732 (explaining that community owner must respond to reasonable requests for financial information, but affirming arbitrator's approval of rent increase because homeowners' association had failed either to present evidence to rebut community owner's assertion that its costs had increased or to request such information in discovery).

[54] *E.g., Cates v. Cates*, 619 N.E.2d 715, 717 (Ill. 1993).

[55] *Id.; see also Humm v. Aetna Cas. and Sur. Co.*, 656 A.2d 712, 716 (Del. 1995) (because language from prior Supreme Court decision was *obiter dicta*, it was not binding legal precedent).

[56] *Cates*, 619 N.E.2d at 717.

[57] *Id.*

[58] *Sandhill Acres*, 210 A.3d at 731.

[59] *Donovan Smith*, 2018 WL 3360585, at *3 (community owner may not "argue that it is entitled to an above-inflation rent increase [*i.e.*, that the proposed rent increase is "directly related" to the operation, maintenance, or improvement of the community] without also being willing to produce documents to contesting homeowners that allow them to fairly test that assertion").

the Superior Court's holding that the community owner had no obligation to produce its financial records in order to justify its "directly-related" claim. As the Supreme Court observed, that holding was not only erroneous, but also "inconsistent with the principles underlying all litigation in our courts," as a community owner must be required, in response to a proper request, to produce documents allowing homeowners to "fairly test" the community owner's asserted entitlement to the rent increase. Ultimately, however, the issue was not dispositive in *that* case because, as noted *supra*, the homeowners had failed to request the financial documentation at arbitration.

Thus, the Supreme Court's statements in *Donovan Smith* and *Sandhill Acres* declaring that arbitrator-supervised discovery is appropriate under the Act, although technically *dicta*, are not simply persuasive, they are judicial *dicta* that must be followed unless erroneous – and Wild Meadows has failed to establish that they are erroneous, as explained more fully *infra*. Given these statements, it is clear that because a community owner may not raise lot rent above the CPI-U without disclosing financial documentation verifying the "directly-related" assertion upon request by the homeowners, the arbitrator may order production of this information in the course of the arbitration proceedings. Therefore, Weidman did not exceed his authority under the Act when he ordered discovery after the HOA requested production of the relevant books and records that provided support for the proposed rent increase. Moreover, even assuming *arguendo* that the statements in *Donovan Smith* and *Sandhill Acres* regarding production of financial records are not judicial *dicta* and therefore need not be followed, they may nonetheless be accepted as

16

persuasive,[60] and thus Weidman did not abuse or exceed his jurisdiction in relying upon them.

Wild Meadows's position regarding the alleged *dicta* in *Donovan Smith* and *Sandhill Acres* is ironic, given that one of Wild Meadows's principal arguments in attacking Weidman's discovery orders is that the Delaware Supreme Court, in *Bon Ayre Land, LLC v. Bon Ayre Community Association* (hereinafter "*Bon Ayre II*"),[61] allegedly held that arbitrators in rent justification proceedings do not have the power to compel the production of information in the course of arbitration proceedings. Putting aside the question of Wild Meadows's characterization of that holding (which characterization, as explained *infra*, is erroneous), the holding itself, like those in *Donovan Smith* and *Sandhill Acres* that Wild Meadows seeks to dismiss, is technically *dicta*. In *Bon Ayre II*, the Supreme Court recognized that the issue of whether the arbitrator must require the community owner to prove market rent by submitting evidence of actual rents charged in comparable communities[62] was not dispositive, but the Supreme Court nonetheless felt "obliged" to address it because such a requirement "would materially restrict arbitrators under the [Act] in the evidence they could hear . . . in a manner that has the potential to raise material doubts about the constitutionality" of the Act.[63] In *Bon Ayre II*, as in *Donovan Smith* and *Sandhill Acres*, the Supreme Court was issuing judicial *dicta* meant to guide future courts and arbitrators in the interpretation and application of the Act, an exercise that is helpful, not harmful, to the administration of justice.

---

[60] *See Wright v. American Home Products Corp.*, 768 A.2d 518, 526 (Del. Super. 2000) (adopting *dicta* from previous holding of this Court, finding it persuasive over contrary non-*dicta* holding of this Court).

[61] 149 A.3d 227 (Del. 2016).

[62] The Court held that the arbitrator could *not* impose this requirement, in part because the Act does not give the arbitrator the power to compel production of information by *non-parties* to the proceeding. *Id.* at 237.

[63] *Id.* at 236.

Finally, in considering the issue of *dicta* raised by Wild Meadows, this Court must be mindful of the standard for a writ of prohibition. As noted *supra*, a writ of prohibition is an extraordinary remedy that may be issued only if Wild Meadows proves by clear and convincing evidence that Weidman has exceeded his jurisdiction.[64] Whether the Supreme Court's guidance in *Donovan Smith* and *Sandhill Acres* was binding upon Weidman or not, Weidman certainly did not exceed his jurisdiction by compelling production of financial documents that the Supreme Court, in those two decisions, had concluded that homeowners have the right to review – and that arbitrators have the right to compel.

### b. Weidman had the authority to compel discovery even though such powers are not explicitly addressed in the Act.

Wild Meadows also argues that because the Act does not contain the word "discovery," let alone explicitly provide an arbitrator with power to compel production of documents, Weidman acted outside the scope of his authority when he compelled the production of its financial records.

However, the Act's failure to state explicitly that an arbitrator has the power to compel discovery does not render an arbitrator incapable of doing so. While the Act does not explicitly authorize the arbitrator to compel the production of relevant information, neither does it prohibit such conduct. Indeed, as noted *supra*, in *Donovan Smith* and *Sandhill Acres* the Supreme Court assumed that under the Act, if a community owner raises lot rent above the CPI-U and the contesting homeowners request fundamental books and records covering the reasoning behind the proposed rent increase, there will be arbitrator-facilitated discovery.[65] Moreover, the Court finds unpersuasive Wild Meadows's argument that discovery

---

[64] *In re Webb*, 2013 WL 1871699, at *1; *In re Dennison*, 2006 WL 197164, at *1; *Whiteley*, 401 A.2d at 953; *In re Mahan*, 2012 WL 5417075, at *1.
[65] *Donovan Smith*, 2018 WL 3360585, at *3; *Sandhill Acres*, 210 A.2d at 731.

would extend arbitration proceedings that are intended under the Act to be expedited,[66] given the fact that the arbitration proceedings involving the parties before the Court have been extended by more than a year due to Wild Meadows's refusal to produce the requested information.[67]

Furthermore, while the Act does not explicitly provide for arbitrator-supervised discovery, the Delaware Administrative Code does so. The State created the Authority to oversee manufactured home communities, and gave it the power under the Act to "[a]dopt a plan of operation and articles, bylaws, and operating rules."[68] Pursuant to this power, the Authority has issued several regulations providing an arbitrator with procedural standards to follow, including Regulation 202-7.10, which provides, in pertinent part, as follows:

> [t]he arbitrator is authorized to require the parties to exchange or provide to the other parties documents relevant to the rent increase at issue, including documents related to the standards set forth in 25 *Del. C.* § 7042.[69]

Wild Meadows argues that Regulation 202-7.10 is not applicable in the present case, and proposes that the Regulation itself is void because it is inconsistent with the Act. Regulation 202-7.10, however, is clearly applicable to, and consistent with, the law pertaining to the issue before the Court. Indeed, the Act gives the arbitrator general authority over the arbitration;[70] *Donovan Smith* and *Sandhill Acres*

---

[66] Wild Meadows Jan. 10, 2020, Br. at 22.

[67] Indeed, it is the members of the HOA, not Wild Meadows, who are adversely impacted by any delay in the proceedings, since under the provisions of the Act, the homeowners must pay the proposed rent increase pending a final decision by the arbitrator. Former 25 *Del. C.* § 7043(i).

[68] Former 25 *Del. C.* § 7011(c)(1).

[69] 1 *Del. Admin. C.* § 202-7.10. Wild Meadows's argument that this regulation mandates exchange only of documents that the parties intend to rely upon at the arbitration hearing is without merit, given that the unambiguous language of the provision requires exchange of documents "relevant to the rent increase at issue," whether intended to be utilized at the hearing or not.

[70] Former 25 *Del. C.* § 7043.

recognize that the arbitrator has authority under the Act to compel discovery of relevant documents; and Regulation 202-7.10 confirms this authority by explicitly stating that it exists. In addition, the Supreme Court implicitly acknowledged the validity of the Authority-enacted regulations addressing arbitrator direction of discovery by citing with approval a companion regulation, Regulation 202-7.17, which authorizes the arbitrator to impose appropriate confidentiality restrictions for documents at issue in the arbitration.[71]

Finally, in resolving a question of statutory interpretation, this Court should give force to the General Assembly's purpose behind the statute at issue.[72] In summary, the purpose of the Act is to protect manufactured homeowners from unreasonable rent increases, while simultaneously ensuring that community owners receive a fair return on their properties.[73] The Supreme Court effectuated those purposes by rendering decisions in *Donovan Smith* and *Sandhill Acres* that acknowledge an arbitrator's authority both to compel discovery of documents relevant to the required justification for a rent increase and, at the same time, to provide that the confidentiality of the information therein is protected.

### c. The Supreme Court has not previously held that an arbitrator under the Act does not have the authority to compel the production of documents by a party to the proceedings.

Wild Meadows argues that the Supreme Court has already considered, and rejected, the principle that an arbitrator has power under the Act to compel discovery.[74] In support of this contention, Wild Meadows cites *Bon Ayre II*, wherein

---

[71] *Donovan Smith*, 2018 WL 3360585, at *3 n. 18.
[72] *See State v. Cephas*, 637 A.2d 20, 25 (Del. 1994) (interpreting Worker's Compensation Act in order to "effectuate its purpose").
[73] Former 25 *Del. C.* § 7040.
[74] Wild Meadows Apr. 14, 2020, Br. at 24-25.

the Supreme Court declared that "the Act does not provide the arbitrator or parties to the arbitration with the power to use compulsory process to obtain evidence from third parties."[75]

In *Bon Ayre II*, in the context of a rent justification proceeding, the Supreme Court explicitly referred to an arbitrator's lack of power to use compulsory process to obtain evidence from *third parties*. At issue in this case, by contrast, is whether an arbitrator possesses the power to compel the production of documents *by parties to the arbitration*, which was addressed in the affirmative by the Supreme Court in *Donovan Smith* and *Sandhill Acres*, as explained *supra*. Therefore, Wild Meadows's argument on this point is incorrect because it misapplies a holding that has no bearing on this case.

### d. Weidman is not bound by the terms of a contractual arbitration agreement.

Wild Meadows argues in its January 10, 2020, Brief that as with a contractual arbitration, where the language of the contract dictates the arbitrator's authority to compel discovery, the language of the Act is the sole source of any such authority for Weidman.[76] In its April 14, 2020, Brief Wild Meadows goes one step further and argues that the Act itself is a contractual agreement between the parties, and thus Weidman is bound to its terms alone.[77] Therefore, according to Wild Meadows, Weidman could rely only upon the explicit terms of the Act, not relevant regulations or Supreme Court jurisprudence, in ascertaining his authority.

---

[75] 149 A.3d at 237.

[76] Wild Meadows Jan. 10, 2020, Br. at 18 n. 3 (citing *LG Elecs.*, 114 A.3d at 1256 n. 47).

[77] Wild Meadows Apr. 14, 2020, Br. at 14-15 (citing *Fagnani v. Integrity Fin. Corp.*, 167 A.2d 67, 73-74 (Del. Super. 1960) ("[T]he authority of the arbitrators is derived from the mutual assent of the parties to the terms of the submission. The parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, and they have a right to stand upon the precise terms of their contract.")).

To the contrary, the Act is not a contractual arbitration agreement limiting Weidman's authority solely to its terms, but a law enacted by the General Assembly. It is true that Weidman's authority comes from the Act; however, the provisions of the Administrative Code and Delaware Supreme Court jurisprudence flesh out how Weidman is to carry out his duties under the Act. In other words, Weidman is bound by the language of the Act and the regulations enacted pursuant to it, as explained by the Supreme Court. Therefore, Weidman appropriately utilized the applicable regulations and Supreme Court jurisprudence to determine the scope of his arbitral authority.

### 2. Weidman did not exceed his jurisdiction by imposing the Confidentiality Agreement governing production of the requested documents.

Wild Meadows argues that Weidman did not have the authority to impose the Confidentiality Agreement governing the production of the documents requested by the HOA prior to arbitration. Not only did Weidman possess such authority, however, but he properly wielded it to balance the HOA's right to access to the information with Wild Meadows's confidentiality and proprietary concerns.

As noted *supra*, the Delaware Supreme Court has acknowledged the arbitrator's authority to address confidentiality concerns with appropriate restrictions. In *Donovan Smith*, the Supreme Court stated that the arbitrator is to "condition discovery and use" of relevant financial documents upon compliance with "appropriate conditions."[78] In *Sandhill Acres*, the Supreme Court reiterated this authority.[79] Moreover, Regulation 202-7.17 provides as follows:

> Any party may request that the arbitrator accord confidential treatment to some or all of the information contained in a document. If the claim of confidentiality is

---

[78] *Donovan Smith*, 2018 WL 3360585, at *3.
[79] *Sandhill Acres*, 210 A.3d at 731.

22

challenged by any party, then the party claiming confidential treatment must demonstrate to the arbitrator that the designated information is confidential as recognized by state law. Notwithstanding any claim of confidentiality, any party to the proceeding shall be allowed to inspect a copy of the confidential document upon the signing of a confidentiality agreement in a form approved by the arbitrator.[80]

This provision demonstrates that an arbitrator is given authority not only over which documents are produced in discovery but also over how those documents are protected.

Weidman, moreover, appropriately exercised this authority. He limited disclosure of the documents at issue to the parties' counsel and their respective staffs; to the parties themselves, including the HOA's directors, officers, and Board members who would be attending the arbitration proceedings; to the parties' experts and consultants and their respective staffs; and to the arbitrator and the appellate courts (*i.e.*, the Superior Court and the Supreme Court) and their respective staffs.[81] He also required HOA representatives as well as experts and consultants to sign a separate agreement agreeing not to disclose confidential information, and provided that any confidential information submitted in the litigation would be filed under seal.[82]

Wild Meadows claims that if forced to disclose its financial information, even with the Confidentiality Agreement in place, it will suffer "irreparable harm," but it offers no justification for this assertion other than the vague contention that Wild Meadows "is a privately-held business" engaging in "a highly competitive market .

---

[80] 1 *Del. Admin. C.* § 202-7.17.
[81] Draft Stipulation and Proposed Order for the Production and Exchange of Confidential Information at ¶ 5 (included in Exhibit C to Wild Meadows's Motion for Judgment on the Pleadings).
[82] *Id.* at ¶¶ 5, 7, 10.

. . dominated by large competitors," and that disclosure of the information would provide those competitors "an enormous tactical and strategic advantage."[83] In *Donovan Smith*, the Supreme Court observed that any claim of confidentiality in a business record must be proven,[84] but despite Wild Meadows's failure to do so with any specificity, Weidman did take reasonable steps to preserve the confidentiality of Wild Meadows's documents. Moreover, it is worth noting that the community owner in *Donovan Smith*, like Wild Meadows, was a private entity,[85] but this did not prevent the Supreme Court from concluding that that owner could not pursue an above-inflation rent increase without being willing to subject its financial records to reasonably protected disclosure.[86]

### 3. With regard to Weidman's exercise of power to compel discovery and impose the Confidentiality Agreement, this Court must exercise deference to these decisions.

An additional consideration lends support to this Court's conclusion that Weidman did not exceed his jurisdiction, *i.e.*, the deference that this Court must afford Weidman as the arbitrator in this case.[87] In short, this Court will defer to Weidman's conclusion that he had the authority to compel discovery and control its scope via the Confidentiality Agreement because both of these decisions, being procedural in nature, were within the bounds of his authority as the arbitrator in the rent justification proceeding.

---

[83] Wild Meadows Jan. 10, 2020, Br. at 12-13.

[84] 2018 WL 3360585, at *3.

[85] *Id.* at *2.

[86] *Id.* at *3.

[87] *See id.* (upon review of arbitrator's decision regarding justification of proposed rent increase, Supreme Court was "hesitant to second-guess the initial fact finder" and determined to "accord deference to the arbitrator"); *December Corp. v. Wild Meadows Home Owners Ass'n*, 2017 WL 923459, at *2 (Del. Super. Mar. 7, 2017) (court applied substantial evidence review to arbitrator's final decision regarding proposed rent increase under the Act because "considerable deference [is] given [to] an arbitrator").

Arbitral authority "includes the power to resolve procedural issues relevant to [the] dispute."[88]  Because an arbitrator's authority over discovery, including the arbitrator's authority to *compel* discovery, is a procedural matter to be addressed by the arbitrator,[89] the issue of whether Weidman has the authority to compel discovery and to limit its scope is a procedural question for Weidman to decide.

Here, Weidman did not exceed his jurisdiction when he decided the procedural issues at bar.  Indeed, his conclusions in the First and Second Decisions are entirely within his authority as the arbitrator.  The Confidentiality Agreement directed and controlled the scope of the discovery and took the concerns of the parties into account.  Weidman denied the HOA's requests to conduct depositions and seek discovery from third parties, and declared that he would permit only the exchange of documents and information.[90]  Additionally, as discussed *supra*, Weidman limited the number of individuals who could review the documents that he had ordered to be produced, and he prohibited any individual who viewed the documents from discussing, disclosing, or electronically copying the information therein in a manner that would enable a prohibited third party from gaining access to the information.[91]

---

[88] *LG Elecs.*, 114 A.3d at 1257.

[89] *Mehiel.*, 2005 WL 1252348, at *6; *see also Hunter v. Bogia*, 2015 WL 5050648, at *4 (Del. Super. July 29, 2015) (stating discovery was "[o]ne of the most significant procedural developments" in Delaware's rules of civil procedure as adopted in 1948).

[90] E-mail from Weidman to Olga Beskrone, Michael Morton, and Bob Valihura (June 26, 2019 15:59 EST) (included in Exhibit C to Wild Meadows's Motion for Judgment on the Pleadings).

[91] Draft Stipulation and Proposed Order for the Production and Exchange of Confidential Information at ¶ 5 (included in Exhibit C to Wild Meadows's Motion for Judgment on the Pleadings).

**C. Because Weidman did not abuse or exceed his jurisdiction, the Court need not address the question of whether Wild Meadows has an appropriate alternative remedy at law.**

As noted *supra,* the standard for a writ of prohibition is two-pronged, and examines whether the lower tribunal has exceeded its jurisdiction and whether the petitioner has access to alternative remedies.[92] Here, as explained *supra*, Weidman did not exceed his jurisdiction as arbitrator when he ordered the disclosure of discoverable information and imposed the Confidentiality Agreement. Therefore, the Court need not reach the issue of whether Wild Meadows has an adequate alternative remedy at law.

**D. This case will not be transfered to the Court of Chancery.**

Pursuant to 10 *Del. C.* § 1902,[93] Wild Meadows has requested transfer to the Court of Chancery should this Court find that it lacks jurisdiction over Weidman in this proceeding.[94] As explained *supra*, however, the Court has rejected Weidman's allegations that it lacks jurisdiction over him. To the contrary, the Court has considered Wild Meadows's request for a writ of prohibition and, upon review, has found it without merit. Therefore, this case will not be transferred to the Court of Chancery pursuant to 10 *Del. C.* § 1902.

In the Court's view, moreover, further litigation of the issue in this proceeding, *i.e.*, the scope of Weidman's arbitral authority over discovery, in the Court of Chancery or any other trial court would be unproductive and would result

---

[92] *Whiteley*, 401 A.2d at 953; *In re Dennison*, 2006 WL 197164, at *1.

[93] 10 *Del. C.* § 1902 states, in pertinent part, that "[n]o civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination . . . .".

[94] Wild Meadows Apr. 14, 2020, Br. at 13-14.

in additional inordinate delay in the resolution of the substantive issue in dispute between the parties – whether the proposed rent increase is justified under the Act.[95]

## IV.   CONCLUSION

Given Delaware Supreme Court jurisprudence, the Act itself, and regulations promulgated by the Authority, it is clear that Weidman did not exceed his jurisdiction as the arbitrator in this case when he ordered Wild Meadows to produce certain documents in discovery and imposed the Confidentiality Agreement. Because Weidman did not exceed his jurisdiction, the Court declines to issue the extraordinary remedy of a writ of prohibition to him.

**WHEREFORE**, the Motions to Dismiss of Weidman and the HOA are **GRANTED,** and the Petition is **DISMISSED**.   Wild Meadows's Motion for Judgment on the Pleadings is **DENIED** as moot.

**IT IS SO ORDERED.**

_____/s/ Noel Eason Primos_____
Judge

NEP/wjs
*Via File & ServeXpress*
oc:    Prothonotary
        Counsel of Record
        file

---

[95] *Cf. Quereguan v. New Castle County*, 2006 WL 2522214, at *7 (Del.Ch. Aug. 18, 2006) (in denying transfer of third-party complaint to Superior Court, Court of Chancery found that such transfer "would result in multiple actions, require duplication of judicial effort and delay provision of any relief that might be due the claimant").

27