**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| WILD MEADOWS HOMEOWNERS ASSOCIATION, INC., | ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | C.A. No.:  K22A-02-001 RLG |
| WILD MEADOWS MHC, LLC, | ) ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

**Submitted:  June 11, 2024**[1]
**Decided:  July 22, 2024**

*Upon Appeal from a Final Decision and Order of the Arbitrator – AFFIRMED.*

John S. Whitelaw, Esquire (argued); Anthony V. Panicola, Esquire; and Olga Beskrone, Esquire, Community Legal Aid Society, Inc.; Dover, Delaware, *Attorneys for Appellant.*

Robert J. Valihura, Esquire (argued) and David C. Zerbato, Esquire, Morton, Valihura & Zerbato, LLC; Greenville, Delaware, *Attorneys for Appellee.*

**GREEN-STREETT, J.**

---

[1] The transcript from oral argument in this matter was not received until July 10, 2024.

## I.    **Introduction**

This appeal concerns a dispute between the owner of a manufactured home community, Wild Meadows MHC, LLC, (the "Landowner"), and an association representing some of the homeowners in that community, Wild Meadows Homeowners Association, Inc. (the "HOA"). Landowner sought a rent increase above inflation under the Rent Justification Act (the "Act").[2] The HOA objected to that increase and filed a petition for arbitration as permitted by statute.[3]

Several discovery disputes necessitated the guidance of the Delaware Supreme Court.[4] After that guidance was provided, the parties proceeded to arbitration. The arbitrator (the "Arbitrator") found Landowner successfully complied with the statutory requirements to seek an above-inflation rent increase by establishing a *prima facie* case that its expenditure directly related to operating, maintaining, or improving the community.[5] The Arbitrator concluded the HOA could not rebut that case, in part because the Arbitrator declined to compel the previous owner of the community to provide its financial records.[6] The HOA

---

[2] 25 Del. C. § 7050 et seq.

[3] 25 Del. C. § 7053(f).

[4] See Wild Meadows MHC, LLC v. Weidman, 250 A.3d 751 (Del. 2021).

[5] The Arbitration Decision (the "Decision") at 18-19, D.I. 16 at A-079-80 (Jan. 31, 2023).

[6] Id. at 21.

appealed to this Court, arguing the Arbitrator committed legal error by failing to permit the compulsion of the financial records of the prior owner. Alternatively, the HOA proffered that Landowner could not establish its *prima facie* case without the financial records of the prior owner. As the records sought by the HOA do not factor into the statutory analysis of Landowner's *prima facie* case, the Decision is **AFFIRMED**.

## II. Factual and Procedural Background

Landowner purchased the Wild Meadows manufactured home community on October 27, 2017.[7] Since that purchase, Landowner and the HOA have been embroiled in several disputes regarding rent increases.[8] This appeal concerns the rent increase Landowner sought for 2019.[9] In compliance with the Act, Landowner held a meeting with the affected homeowners explaining the basis for the rent increase.[10] Landowner asserted it spent $56,412.76 (the "Expenditure") on expenses directly related to operating, maintaining, or improving the community. Landowner

---

[7] Appellant's Opening Br. at 7, D.I. 16 (Jan. 31, 2023).

[8] See Wild Meadows MHC, LLC v. Wild Meadows Homeowners Ass'n, Inc., 2024 WL 1956135, at *1 (Del. Super. May 2, 2024) ("Wild Meadows 2020") (the Court will refer to this case as Wild Meadows 2020, as that was the nomenclature used by the parties at oral argument. Wild Meadows 2020 dealt with a disputed rent increase for the year 2020); see also Wild Meadows MHC, LLC v. Wild Meadows Homeowners Ass'n, Inc., 2024 WL 1434288, at *1 (Del. Super. Apr. 2, 2024).

[9] Appellant's Opening Br. at 7, D.I. 16.

[10] Id.

further noted it sought to increase rent under the "market rent" factor outlined by statute.[11] The HOA objected to the rent increase, and petitioned for arbitration as outlined by 25 Del. C. § 7053(c).[12]

The ensuing discovery process involved substantial litigation, culminating in a decision from the Delaware Supreme Court compelling Landowner to turn over its financial records for review by the HOA.[13] The original arbitrator initially assigned to this matter withdrew. A new arbitrator (the previously defined "Arbitrator") oversaw discovery under the terms mandated by Weidman.[14]

Critically, the Arbitrator denied the HOA's request to compel discovery of the previous owner's financial statements.[15] The Arbitrator determined no language within the Act permitted the Arbitrator, or either of the parties, to compel an unrelated third party to provide discovery.[16] Further, the Arbitrator found any such financial records to be irrelevant to the finances of the current community owner.[17]

---

[11] 25 Del. C. § 7052(c)(7) (this portion of the code has since been revised; all citations are to the code as written before July 1, 2022).

[12] Appellee's Answering Br. at 10, D.I. 19 (Feb. 28, 2023).

[13] For a more complete recitation of the discovery dispute, see Weidman, 250 A.3d 751 (Del. 2021).

[14] Appellant's Reply Br. at 11, D.I. 22 (Mar. 17, 2023).

[15] Decision at 21, D.I. 16.

[16] Id.

[17] Id.

As the current community owner's finances constitute the only finances with any bearing on whether the current community owner's costs increased, the Arbitrator held the finances of a previous owner were not relevant to his analysis.[18]

Following the arbitration proceedings, the Arbitrator found Landowner met its statutory burden to seek an above-inflation rent increase.[19] Neither party disputed Landowner's compliance with 25 Del. C. § 7052(a)(1), requiring no health or safety violations persisting for more than fifteen days in the twelve months preceding the rent increase. The parties also did not dispute Landowner expended $56,412.76 – the Expenditure – to purchase signage and replacement furniture.[20]

The HOA disputed the necessity and relatedness of the Expenditure, but the Arbitrator concluded "on balance, these funds were expended in direct relation to operation, maintenance, and improvement of the community."[21] The Arbitrator dismissed the HOA's argument that the Expenditure could not be directly related to the community because it provided a tangential benefit to Landowner's marketing

---

[18] Id.

[19] Id. at 26.

[20] Id. at 20.

[21] Id.

interests.[22] The Arbitrator determined the Act contained no provision requiring an increase in costs "must be unrelated to any other consequence."[23]

Having found the Expenditure satisfied the statutory "directly related" requirement, the Arbitrator next turned to the HOA's rebuttal case.[24] The Arbitrator acknowledged the HOA could not present a meaningful rebuttal because it lacked access to prior financial records to compare against Landowner's costs.[25] Based on the Arbitrator's earlier rulings regarding discovery, he recognized the lack of prior financial records placed the HOA "in a difficult, if not impossible, evidentiary position."[26] Nevertheless, the Arbitrator determined he could not punish Landowner for the HOA's inability to access evidence to rebut the *prima facie* case.[27] The Arbitrator concluded Landowner successfully carried its burden of establishing a *prima facie* case, and the HOA failed to rebut that case successfully.[28]

---

[22] Id.

[23] Id.

[24] Id. at 20-21.

[25] Id. at 21.

[26] Id.

[27] Id. at 22.

[28] Id.

6

The Arbitrator then considered whether Landowner met its burden to show the "desired rent increase is consistent with the 'market rent,' as that term is defined by statute."[29] The Arbitrator noted the HOA provided no expert testimony disputing Landowner's contentions regarding market rent.[30] Finding Landowner successfully met its burden, the Arbitrator granted Landowner's desired rent increase.[31]

The HOA appealed to this Court, arguing the Arbitrator committed legal error by: (1) holding the financial information of the previous owner contained no relevant information to the instant case; (2) misconstruing the term "community owner;" (3) misapplying the concept of piercing the corporate veil; and (4) finding sufficient evidence in the record to determine the rent increase qualified as directly related as defined by statute.[32] During the pendency of this appeal, this Court issued an opinion concerning an appeal related to a rent increase affecting another manufactured housing community, Shady Park Homeowner's Association, Inc. v. Shady Park MHC, LLC.[33] Counsel for both parties here participated in Shady Park, and the affected homeowners filed an appeal of that decision to the Delaware Supreme

---

[29] Id. at 23.

[30] Id. at 25.

[31] Id.

[32] See generally Appellant's Opening Br. at 1-2, D.I. 16

[33] 2023 WL 2366632, at *1 (Mar. 3, 2023).

Court.  Believing <u>Shady Park</u> to be dispositive, Landowner requested a stay of this case pending the Delaware Supreme Court's decision.[34]  Following an office conference, this Court granted that request.[35]

The Delaware Supreme Court affirmed this Court's ruling in <u>Shady Park</u>.[36]  Following that affirmation, this Court requested supplemental briefing from the parties regarding what issues in this case, if any, <u>Shady Park</u> controlled.[37]  After the parties filed their supplemental briefs, but before oral argument occurred, this Court issued a decision in another case regarding a dispute between the parties over a proposed rent increase in the same manufactured home community for 2020.[38]

On June 11, 2024, the Court held oral argument in this matter.  At oral argument, the HOA conceded the Court's decision in <u>Wild Meadows 2020</u> is dispositive and moots the instant appeal.[39]  The HOA noted it does not agree with the Court's decision in that case.[40]  Given the procedural posture of <u>Wild Meadows</u>

---

[34] Letter to the Court Requesting Stay, D.I. 26 (Apr. 4, 2023).

[35] D.I. 34 (Jun. 22, 2023).

[36] <u>See</u> <u>Shady Park Homeowners' Ass'n, Inc. v. Shady Park MHC, LLC</u>, 308 A.3d 168 (Del. 2023).

[37] D.I. 37 (Jan. 8, 2024).

[38] <u>See</u> <u>Wild Meadows 2020</u>, 2024 WL 1956135, at *1 (Del. Super. May 2, 2024).

[39] Tr. of Oral Arg. At 4-6, D.I. 48 (Jul. 10, 2024).

[40] <u>Id</u>. at 4-5.

2020, however, the HOA has not yet been able to file an appeal in that case despite its disagreement with the holding.[41] Thus, the HOA requested this Court not address the discovery matters in this case; to what degree Shady Park controls; or Landowner's contentions regarding its alleged losses and how those losses should factor into an analysis of a proposed rent increase.[42] Instead, the HOA asked this Court to rule on the "appropriate … mechanism" regarding the analysis of the HOA's rebuttal argument to Landowner's *prima facie* case.[43] Landowner agreed the HOA effectively conceded the instant appeal, but requested a more thorough examination of the issues presented in this case.[44]

## III. Standard of Review

A review of an arbitrator's decision requires this Court to determine (1) whether the record created in arbitration is sufficient justification for the arbitrator's decision, and (2) whether the arbitrator's decisions are free from legal error.[45] "[S]ubstantial evidence review is the appropriate standard of review for the

---

[41] Id. at 7.

[42] Id. at 19-20.

[43] Id. at 20-21.

[44] Id. at 18.

[45] Ridgewood Manor MHC, LLC v. Ridgewood Manor HOA, 2023 WL 4363899, at *3 (Del. Super. July 3, 2023) (citing 25 Del. C. § 7054).

9

arbitrator's factual findings."[46]  "Substantial evidence means evidence that is relevant and that a reasonable mind might accept as adequate to support a conclusion."[47]  "[I]ssues of statutory construction and interpretation are reviewed *de novo*."[48]

## IV.  Discussion

The Court agrees with the HOA's concession that the analytical framework outlined in Wild Meadows 2020, as applied to the instant case, renders its appeal moot.  Accordingly, the Court will limit this opinion to an examination of that framework, and its application to the facts presented by the HOA at oral argument.  The Court begins that examination with a review of the trilogy of cases most illustrative of that framework – Sandhill Acres, Shady Park, and Wild Meadows 2020.

### A.  Sandhill Acres precludes imposing a requirement on Landowner not contained within the statute

To establish a *prima facie* case satisfying the directly related standard, "a community owner need only show that there are no relevant health and safety

---

[46] Sandhill Acres MHC, LC v. Sandhill Acres Home Owners Ass'n, 210 A.3d 725, 731, n. 37 (Del. 2019).

[47] Shady Park, 2023 WL 2366643, at *2 (Del. Super. Mar. 3, 2023).

[48] Ridgewood Manor, 2023 WL 4363899, at *3 (Del. Super. July 3, 2023) (citing Bon Ayre Land, LLC v. Bon Ayre Cmty. Ass'n, 149 A.3d 227, 233 (Del. 2016)).

violations and that the proposed rent increase is directly related to operating, maintaining, or improving the manufactured home community."[49] In Sandhill Acres, the community owner relied on expenses related to a new water filtration system to justify the rent increase.[50] An arbitrator found no relevant health or safety violations existed; the community owner's referenced expenses satisfied the directly related requirement; and the community owner justified the rent increase under the market rent factor.[51] Accordingly, the arbitrator granted the proposed rent increase.[52] This Court reversed, finding the community owner needed to show "both that its overall costs are higher than they previously were and that its original expected return had declined."[53]

The Delaware Supreme Court reversed this Court, holding that this Court imposed "a requirement on the community owner that the statute does not contain."[54] The Act only requires "the community owner to offer evidence that in making some capital improvement, the community owner has incurred costs that are likely to

[49] Sandhill Acres, 210 A.3d at 728 (internal quotations omitted) (quoting 25 Del. C. § 7042(a), (b)).

[50] Id. at 727.

[51] Id.

[52] Id.

[53] Id.

[54] Id. at 729.

reduce its expected return."[55]  That standard only imposes a "modest" requirement on the community owner.[56]  In summary, the community owner must show: (1) "that there are no relevant health and safety violations;" (2) the community owner incurred an expense; and (3) that expense directly related to operating, maintaining, or improving the community.[57]  If the community owner makes that requisite showing, it has successfully established its *prima facie* case.[58]

Sandhill Acres also addressed the homeowners' opportunity to rebut a *prima facie* case.  A homeowner may rebut a *prima facie* case by "offering evidence of her own that the expenditure did not in fact reflect any increase in costs – for example because the expenditure was offset by reduced expenses in other areas."[59]  The homeowners in Sandhill Acres presented no such evidence, and so were unable to rebut the community owner's *prima facie* case.[60]

---

[55] Id.

[56] Id.

[57] Id.

[58] Id.

[59] Id.

[60] Id.

## B. Shady Park clarified the showing a community owner must make regarding its expected return

As noted above, this Court issued a stay in the instant case pending the outcome of the homeowners' appeal in Shady Park. Shady Park largely focused on the "directly related" requirement contained within the Act. The community owner expended funds to construct "an on-site office to house community management personnel."[61] An arbitrator found that expenditure satisfied the requirements of the Act, and granted the community owner's requested rent increase.[62] The homeowners appealed to this Court, arguing about both the current and previous owner's expected returns and what constituted "a just, reasonable[,] and fair return."[63]

This Court found an analysis of the previous owner's returns and the current owner's expected rate of return to be "a confusion of the relevant issues and law."[64] Citing to Sandhill Acres, this Court reiterated "it suffices for the community owner to offer evidence that[,] in making some capital improvement, the community owner has incurred costs that are likely to reduce its expected return."[65] Applying that

---

[61] Shady Park, 2023 WL 2366643, at *3 (Del. Super. Mar. 3, 2023).

[62] Id.

[63] Id. at *4.

[64] Id. at *5.

[65] Id. (internal quotations omitted) (quoting Sandhill Acres, 210 A.3d at 729).

standard, this Court reasoned "the expenditure likely reduced the expected return of the Owner due to the large amount of money allocated to the new office building."[66] "When a landowner invests in improving the community, it can reap the benefits of increasing the rent above inflation rates."[67]  The Delaware Supreme Court affirmed "on the basis of and for the reasons stated" in this Court's opinion.[68]

### C.    Wild Meadows 2020 explains what evidence homeowners must present to show offsetting expenses

In Wild Meadows 2020, this Court again confronted the issue of what factual showing a community owner must make to satisfy the directly related requirement, and what evidence a homeowner must present to rebut a *prima facie* case.  The homeowners in Wild Meadows 2020 did not dispute the community owner expended funds on improvements directly related to operating, maintaining, or improving the community.[69]  The homeowners contended, however, that as the community owner's total costs had decreased, its expenditure could not reflect a reduction in its overall return.[70]

---

[66] Id.

[67] Id. (citing Bon Ayre Land, 149 A.3d at 234).

[68] Shady Park Homeowners' Ass'n, Inc. v. Shady Park MHC, LLC, 308 A.3d 168 (Del. 2023).

[69] Wild Meadows 2020, 2024 WL 1956135, at *2 (Del. Super. May 2, 2024).

[70] Id.

14

This Court, relying on the Delaware Supreme Court's decision in <u>Sandhill Acres</u>, rejected that argument.[71]  No language in the Act, or in any of the Delaware Supreme Court's decisions interpreting the Act, requires a community owner to demonstrate that its *total* costs have increased.[72]  Rather, a community owner must show "that, in making some capital improvement, it incurred costs that are likely to reduce its expected return."[73]

The Act requires a community owner seeking to increase rent above inflation to demonstrate its expected return has been lowered by an expense directly related to operating, maintaining, or improving the community.[74]  Homeowners may rebut that showing by providing evidence that the expense did not contribute to an increase in costs because it offset other expenses.[75]  Homeowners seeking to prove the existence of offsetting expenses must show evidence that the expense itself reduced costs – by lowering ongoing maintenance costs, for example.[76]  Showing only that the community owner's overall costs decreased, however, does not suffice.[77]

---

[71] <u>Id</u>. at *4.

[72] <u>Id</u>.

[73] <u>Id</u>. (citing <u>Sandhill Acres</u>, 210 A.3d at 729).

[74] 25 <u>Del</u>. <u>C</u>. § 7052(b)(2).

[75] <u>Sandhill Acres</u>, 210 A.3d at 729.

[76] <u>Wild Meadows 2020</u>, 2024 WL 1956135, at *4 (Del. Super. May 2, 2024).

[77] <u>Id</u>.

To hold otherwise would impose a requirement on the community owner not contained within the Act – a requirement to show its total costs have increased – resulting in a misinterpretation of the Act.[78]  The Act requires a community owner to invest in the community before seeking a rent increase, thus preventing indiscriminate rent increases untethered to the costs of running the community.[79]  The Act does not require the community owner to operate at a loss, increase its total costs, or otherwise make any showing beyond the requirements explicitly outlined within the language of the Act.[80]

**D.  Applying the requisite analytical framework to this appeal, the HOA cannot rebut Landowner's *prima facie* case successfully**

The parties do not dispute that Landowner has complied with its requirements under the Act to establish a *prima facie* case.[81]  The Arbitrator found the HOA failed to establish a successful rebuttal case, in large part because the Arbitrator's decisions regarding discovery made it impossible for the HOA to produce the evidence it considered relevant to its rebuttal.[82]  The HOA initially asked this Court to reverse

---

[78] Sandhill Acres, 210 A.3d at 729 ("[W]e hold that the Superior Court misinterpreted the Act by imposing a requirement on the community owner that the statute does not contain.").

[79] 25 Del. C. § 7052(b)(2).

[80] Wild Meadows 2020, 2024 WL 1956135, at *5 (Del. Super. May 2, 2024).

[81] Tr. of Oral Arg. at 19, D.I. 48 ("Was there an expense, yes there was; did the HOA concede that that met the *prima facie* case, absolutely.  No question about that.").

[82] Decision at 20-22, D.I. 16.

the Arbitrator's findings regarding discovery, and remand the case to allow that discovery to occur.[83]

Given the HOA's concessions at oral argument, however, the Court need not address the discovery issues raised by the HOA. There are no offsetting expenses present in this case.[84] The HOA intended to rebut the *prima facie* case by comparing Landowner's expected return against the expected return of the previous owner.[85] As that comparison does not factor into the analysis of the directly related requirement, and therefore cannot rebut the *prima facie* case, the HOA's access to that evidence would not change the Act's required analysis. Absent a showing that the Expenditure did not contribute to an increase in Landowner's costs, the HOA cannot successfully rebut the *prima facie* case.

## V. <u>Conclusion</u>

The HOA conceded that the appeal of this matter is controlled by <u>Wild Meadows 2020</u>, which found that a prior owner's financial records could not be used to establish the existence of offsetting expenses. Accordingly, no basis remains for the HOA to appeal the Arbitrator's Decision. The Arbitrator's Decision is

---

[83] Opening Br. at 1-3, D.I. 16.

[84] Tr. of Oral Arg. at 5, D.I. 48.

[85] <u>Id</u>.

sufficiently justified by the record and free from legal error. The Decision is

**AFFIRMED**.

      **IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge